Reyna v. First Nat'l Bank & Penoli



NUMBER 13-99-546-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

____________________________________________________________________

RICARDO V. REYNA, Appellant,


v.


FIRST NATIONAL BANK IN EDINBURG AND DAVID PENOLI, Appellees.

____________________________________________________________________


On appeal from the 92nd District Court of Hidalgo County, Texas.

____________________________________________________________________
O P I N I O N

Before Justices Hinojosa, Yañez, and Chavez (1)

Opinion by Justice Hinojosa


Appellant, Ricardo V. Reyna ("Reyna"), appeals from a summary judgment, directed verdict, and jury's take-nothing
verdict on his claims against appellees, First National Bank in Edinburg ("FNB") and David Penoli ("Penoli"). By ten
points of error, Reyna contends the trial court erred in: (1) directing a verdict against him on his tortious interference with a
contract claim; (2) directing a verdict against him on his contract for employment claim; (3) excluding exhibit 19; (4)
granting summary judgment on his claims of intentional infliction of emotional distress and fraud; (5) entering a final
judgment because the evidence was factually insufficient; and (6) taxing all costs against him. We affirm.

A. Background


In 1990, Reyna and FNB entered into an oral agreement for the installation of a new computer system for FNB. (2) Reyna
was a computer consultant for FNB and was to acquire and install the new computer system for all aspects of the banking
operations. Reyna reported to Penoli, FNB's comptroller. 

Reyna had a business relationship with Unisys, a supplier of computers. The relationship was effectuated through
Hallmark Electronics, which handled accreditation of a business as a "reseller value-added remarketer" ("RVAR") to sell
Unisys products. As a RVAR for Unisys, Reyna was able to obtain favorable prices for Unisys products. Reyna was the
only RVAR for Unisys products in the Rio Grande Valley. Reyna was also an authorized reseller for Microware. (3) Reyna's
relationship with the computer vendors allowed him to obtain favorable prices on the computers.

In May 1992, FNB issued special purchase orders to the vendors to order the equipment. The equipment was delivered to
FNB in June and July of 1992. The vendors invoiced Reyna for the equipment. Reyna then summarized the invoices and
presented his summary to FNB. By October 14, 1992, Reyna had invoices for the computer equipment totaling
$181,153.53.

At a meeting on October 14, 1992, Reyna told Penoli that FNB had not paid him for the equipment in a timely fashion and
that he was receiving threatening phone calls from collection agencies. Penoli claimed that because FNB did not receive
the invoices from Reyna until October 6, 1992, it could not be expected to make full payment on October 14. Further, FNB
was not obligated to pay the invoices until it verified that all equipment Reyna had billed for was received, installed, and
operational. Nevertheless, Penoli tendered a check to Reyna for payment of half the amount billed. An argument later
occurred, and Penoli terminated Reyna's employment and took back the partial-payment check. On October 15, 1992, FNB
paid Hallmark and Microware in full.

On October 13, 1994, Reyna filed suit against FNB and Penoli, alleging breach of contract, fraud, intentional infliction of
emotional distress, tortious interference with contract, negligence, and promissory estoppel. On December 19, 1994, FNB
filed a counterclaim against Reyna for failure to pay a promissory note. On October 14, 1998, FNB and Penoli filed a
motion for summary judgment. On November 18, 1998, the trial court granted appellees' motion for summary judgment on
Reyna's fraud and intentional infliction of emotional distress claims. The remaining claims were tried to a jury on March 8,
1999.

B. Summary Judgment


In his sixth, seventh, and eighth points of error, Reyna contends the trial court erred in granting summary judgment on his
fraud and intentional infliction of emotional distress claims.

The proper inquiry on appeal is whether the defendant, in seeking summary judgment, fulfilled his initial burden to: (1)
establish as a matter of law that there remains no genuine issue of material fact as to one or more essential elements of the
plaintiff's cause of action, or (2) establish its affirmative defense to the plaintiff's cause of action as a matter of law. Casso
v. Brand, 776 S.W.2d 551, 556 (Tex. 1989); Nixon v. Mr. Property Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985);
Swilley v. Hughes, 488 S.W.2d 64, 67 (Tex. 1972). In deciding whether there is a disputed material fact issue precluding
summary judgment, evidence favorable to the non-movant must be taken as true. Star-Telegram, Inc. v. Doe, 915 S.W.2d
471, 474 (Tex. 1995); Nixon, 690 S.W.2d at 549. Every reasonable inference must be indulged in favor of the non-movant
and any doubts resolved in his favor. Nixon, 690 S.W.2d at 549. Evidence favoring the movant's position will not be
considered unless it is uncontradicted. Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41,
47 (Tex. 1965). If a summary judgment is granted generally, without specifying the reason, it will be upheld if any ground
in the motion for summary judgment can be sustained. Carr v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989); Weakly v. East,
900 S.W.2d 755, 758 (Tex. App.-Corpus Christi 1995, writ denied).

1. Summary Judgment Evidence


FNB and Penoli moved for summary judgment on the grounds that: (1) the oral contract was not breached because payment
in full was not required until all the work was completed; (2) the claim for fraud fails because there never was a
misrepresentation to Reyna because FNB and Penoli represented that Reyna would be paid upon the receipt and installation
of the computer system; (3) FNB and Penoli did not act in such a way as to intentionally inflict emotional distress upon
Reyna because withholding payment for the computer equipment is not outrageous or extreme; (4) Penoli did not interfere
with Reyna's contract with FNB because, as comptroller for FNB, Penoli was entitled to review invoices submitted by
Reyna and had the authority to withhold funds for payment of the invoice should there be a question as to whether or not
computer equipment had been received and properly installed; (5) Reyna's claim for negligence fails because his claims
arise out of an alleged breach of contract and cannot present a claim in tort.

In support of these grounds, FNB and Penoli included as summary judgment evidence the affidavit of David Penoli. The
affidavit states:

My name is DAVID PENOLI and I am over eighteen (18) years of age. I reside at 301 Austin Blvd., Edinburg, Texas. I
am fully competent to make this Affidavit. I have personal knowledge of the facts stated herein, and they are all true and correct.



I was employed by FIRST NATIONAL BANK IN EDINBURG (the Bank) when the events giving rise to this cause of
action occurred. I was the Bank's comptroller, and my duties included monitoring Bank expenses and paying the Bank's bills.



Sometime in 1990 the Bank hired RICARDO V. REYNA, Plaintiff in this lawsuit, to acquire and install a new and updated
computer system. RICARDO V. REYNA was an independent contractor of the Bank. The agreement between the Bank
and RICARDO V. REYNA was never put in writing.



The terms of the agreement were that RICARDO REYNA would supply and install a working computer system that met all
of the Bank's requirements.



Sometime before October 14, 1992, I was presented with invoices for $181,153.53. The invoice reflected the cost of
equipment and services provided to the Bank by RICARDO V. REYNA. I did not think it was in the best interest of the
Bank to pay the invoices until I had verified receipt and installation of all the equipment which the Bank was being asked to
pay for.



On October 14, 1992, the Bank authorized payment of half the amount owed, approximately $90,000.00. At that time the
Bank was unsure of what computer equipment had actually been received and what had been installed.



I with held [sic] full payment of the invoices in an effort to protect the business interests of the Bank. The Bank was not
going to pay for equipment it had neither received or had been properly installed.



I never asked RICARDO V. REYNA to lie about anything.



FURTHER AFFIANT SAYETH NOT.



/s/ 

DAVID PENOLI 



In response to the motion for summary judgment, Reyna objected that Penoli's affidavit was improper summary judgment
evidence because there was no basis for Penoli's alleged personal knowledge, it failed to state any facts to support any
claim that the affiant is competent to make the affidavit, and the affidavit failed to state how Penoli obtained the personal
knowledge of the facts stated. Reyna further asserted in his response: (1) FNB agreed to pay for purchases on a timely
basis, thus, it breached its agreement by not paying for the computer equipment on a timely basis; (2) FNB made a
misrepresentation of material fact by stating that payment would be made on a timely basis; (3) Reyna was fired for
refusing to lie to vendors who were seeking payment for equipment that he had purchased for FNB; (4) Penoli interfered
with the original agreement between Reyna and FNB by engaging in the willful and intentional act of refusing to authorize
payments when due; and (5) FNB and Penoli have submitted no evidence on negligence. Reyna presented the following
summary judgment evidence: (1) his affidavit, and (2) Microware invoices. Reyna's affidavit states:

My name is RICARDO V. REYNA. I am over the age of 18 years and have never been convicted of a felony. I have never
been declared mentally incompetent. I have personal knowledge of all facts herein by virtue of my position as Plaintiff in
this lawsuit and by virtue of my former position with First National Bank in Edinburg. All facts stated herein are true and correct.



I work as a computer systems analyst and a computer consultant. I have taken University level courses in computer
programming and have worked in the computer field for more than 15 years.



Around 1991, I started doing computer work for First National Bank in Edinburg. At that time, I was doing computer
consulting work for numerous clients. After First National Bank in Edinburg had an opportunity to see what I could do as a
computer systems analyst and consultant, we reached an agreement wherein I was to sell equipment and provide computer
consulting services to First National Bank in Edinburg. The terms of the oral agreement were as follows:



 


 I was to drop and discontinue servicing all other clients.




 


 I was to drop my hourly billing charge from $35.00 per hour to $25.00 per hour.




 


 First National Bank would pay me a consulting charge of $25.00 per hour for all hours I worked on First National Bank
matters.




 


 First National Bank in Edinburg would forgive a debt that I owed to First National Bank, which at the time was
approximately $22,000.00.




 


 I was to become reaccredited as an authorized reseller (or RVAR) of computer equipment so that I could obtain a more
favorable price for equipment to be purchased for First National Bank in Edinburg.




 


 I would use my position as an authorized reseller of computer equipment to purchase computer equipment that I would
resell for no profit to First National Bank in Edinburg.




 


 First National Bank in Edinburg would pay for the equipment that I purchased in a timely fashion, i.e., on or before the
due date of each invoice.




In 1992, as per my agreement with First National Bank, I ordered computer equipment from Hallmark, Microware and
other vendors. I received invoices for these purchases from Microware and Hallmark as well as from the other vendors.
Upon receipt of these invoices, I promptly gave a copy of the invoices to Mr. David Penoli, Comptroller of First National
Bank at that time. I have attached a copy of some of the invoices from Microware as Exhibit A. Exhibit A reflects a total
amount due of $77,776.06. I am not presently in possession of invoices from Hallmark.



The invoices attached as Exhibit A reflect amounts and due dates:



(invoice amounts and due dates set out)




Payment on most of these items was due no later than July 2, 1992.



I informed Mr. Penoli of the invoices of Microware and Hallmark as I received them. In addition, First National Bank in
Edinburg has preapproved the purchase of the items of equipment prior to the placing of the orders.



* * * * *



First National Bank in Edinburg did not pay the invoices of Hallmark and Microware on time. As a result, I began
receiving collections calls from Microware and Hallmark.



* * * * *



The situation came to a head on October 14, 1992. After conversations with the representatives of Hallmark and
Microware, and receipt of various messages threatening to file suit unless full payment was received, I spoke with Mr.
David Penoli on October 14, 1992. . . . At our meeting, I told him that unless immediate full payment was made to
Microware and Hallmark, both First National Bank and I were going to be sued. . . . Mr. Penoli told me to tell Microware
and Hallmark that the reason for the delay in payment was because I had given the invoices to Mr. Penoli for First National
Bank for the first time within the past few days. The statement was not true. . . . I had already told Microware and
Hallmark from the outset that I had informed Mr. Penoli about the invoices and the amounts due shortly after I had received
them, which was around May or June of 1992. . . . He handed me a check for approximately one-half of the balance, in an
amount of approximately $90,000.00, and told me to pay Hallmark and Microware with it. . . . He told me that if I wanted
to work at First National Bank, then I needed to be a team player. . . . He told me that I needed to reconsider my decision
about what I was going to tell Microware and Hallmark. . . . I told Penoli that if he needed to know my decision right now,
then my decision was that I could not do it, i.e., I could not lie to Microware and Hallmark by telling them that I had only
recently given the invoices to Mr. Penoli . . . when in fact I had given him the invoices some time ago. In response, Mr.
Penoli told me that my services were no longer required at First National Bank. . . . 



* * * * *



The equipment that is the basis of the dispute was received several months prior to October 14, 1992 and was functional
and running for some time before October 14, 1992. . . .



My firing by First National Bank on October 14, 1992 caused me severe emotional distress and mental anguish. . . .
Because First National Bank in Edinburg had insisted that I drop all other clients as a term of our agreement, the effects of
being fired by First National Bank were even more devastating.



/s/ 

RICARDO V. REYNA

FNB and Penoli objected to Reyna's summary judgment evidence because the attached invoices of Microware constitute
hearsay. FNB and Penoli also filed a reply to Reyna's response to their motion for summary judgment. In their reply, FNB
and Penoli asserted: (1) the affidavit of Penoli is admissible; (2) Reyna's affidavit fails to show a breach of contract because
he admits that he failed to provide copies of the original invoices to FNB until early October 1992; (3) when presented with
original invoices in October 1992, they were quickly paid; (4) withholding money from Reyna and the vendors for the
purchase of computer equipment, so that they could check purchases cannot be considered so outrageous in character as to
be beyond all bounds of decency; (5) Penoli had every right as the comptroller to withhold payment; and (6) a claim arising
solely in contract does not present a claim in tort. FNB and Penoli also attached excerpts from Reyna's deposition as
evidence that he did not provide copies of the original invoices until early October 1992. In the deposition, Reyna said that
he did not present FNB with the invoices from the vendors, rather he presented FNB with his own invoice as a summary of
the vendors' invoices, until Penoli began requesting the original invoices. It was further adduced that Reyna invoiced FNB
for the $180,000.00 on October 6, 1992.

Reyna filed an objection to FNB's summary judgment evidence because his deposition testimony was not authenticated and
it was untimely filed.

2. Analysis


In his brief, Reyna reasserts the objections he made in the above-mentioned motions before the trial court, e.g.,
unauthenticated deposition, untimely deposition testimony, etc. Reyna did not preserve these complaints for appeal. While
he did make the written objections and file them with the trial court, he did not receive a ruling on them. Therefore,
Reyna's objections to FNB and Penoli's summary judgment evidence have not been preserved for our review. See Tex. R.
App. P. 33.1.

Reyna further contends the trial court erred in granting summary judgment on his fraud and intentional infliction of
emotional distress claims because FNB and Penoli did not address these claims in their evidence.

In his petition, Reyna contended that FNB and Penoli had committed fraud because they represented that the computer
equipment would be paid for when received, he relied upon the misrepresentation, the misrepresentation was made with
knowledge of its false nature or with reckless disregard for its veracity, and Reyna has been damaged because his ability to
do business in the banking community was virtually eliminated.

Fraud is established by proving: (1) that a material representation was made; (2) that it was false; (3) that the speaker knew
it was false when made or that the speaker made it recklessly without any knowledge of the truth and as a positive
assertion; (4) that he made it with the intention that it be acted upon by the other party; (5) that the party acted in reliance
upon it; and (6) damages. See Insurance Co. of N. Am. v. Morris, 981 S.W.2d 667, 674 (Tex. 1998); T.O. Stanley Boot Co.,
Inc. v. Bank of El Paso, 847 S.W.2d 218, 222 (Tex. 1992). Because the representation in this case involves a promise to do
an act in the future, Reyna also had to prove that, at the time FNB made the promise to pay the invoices, it had no intention
of performing the act. Crim Truck & Tractor v. Navistar Int'l Transp. Corp., 823 S.W.2d 591, 597 (Tex. 1992); Spoljaric
v. Percival Tours, Inc., 708 S.W.2d 432, 433 (Tex. 1986); Stanfield v. O'Boyle, 462 S.W.2d 270, 272 (Tex. 1971).

The summary judgment evidence established that appellees did in fact tender payment of $90,000.00 in October 1992. This
established that appellees did intend to pay for the equipment. Appellees had not paid the full invoice because they were
insuring receipt and installation of all the equipment. By tendering partial payment to Reyna on October 14, 1992,
appellees have negated any claim that they had no intention of paying. Accordingly, we hold the trial court did not err in
granting appellees' motion for summary judgment on the issue of fraud.

To prove intentional infliction of emotional distress, a plaintiff must establish that: (1) the defendant acted intentionally or
recklessly; (2) its conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress;
and (4) the emotional distress was severe. Twyman v. Twyman, 855 S.W.2d 619, 621 (Tex. 1993). Extreme and
outrageous conduct is defined as "that which is so extreme in degree, or so outrageous in character, as to go beyond all
bounds of decency, to be regarded as atrocious, and utterly intolerable in a civilized community." Wornick Co. v. Casas,
856 S.W.2d 732, 734 (Tex. 1993). The Texas Supreme Court has cautioned that this tort "does not lie for ordinary
employment disputes," and that the kind of extreme conduct necessary to raise a fact question of intentional infliction of
emotional distress in the workplace "exists only in the most unusual of circumstances." GTE Southwest, Inc. v. Bruce, 998
S.W.2d 605, 612-13 (Tex. 1999). By definition, employers supervise, review, criticize, demote, transfer, discipline, and
terminate employees, and while this is often stressful and unpleasant for an employee - and at times may even be
unwarranted - the employer nevertheless "must have latitude to exercise these rights in a permissible way, even though
emotional distress results." Id.at 612. "Even the wrongful transfer, failure to promote, or termination of an employee does
not, standing alone, constitute intentional infliction of emotional distress." Brewerton v. Dalrymple, 997 S.W.2d 212, 216
(Tex. 1999).

Reyna contends that by forcing him to "choose between telling the truth and keeping his job," FNB and Penoli's actions
constituted extreme and outrageous behavior. Reyna's complaint centers on his allegation that his employment was
terminated because he refused to lie to the vendors about FNB's receipt of their invoices. Reyna asserts that when he met
with Penoli about the invoices, Penoli told him to call the vendors and tell them that he had just given FNB the invoices for
payment. Assuming, arguendo, that Penoli did ask Reyna to lie about the invoices to buy FNB some time to pay the
invoices, his action does not constitute intentional infliction of emotional distress. See Beiser v. Tomball Hosp. Auth., 902
S.W.2d 721, 725 (Tex. App.-Houston [1st Dist.] 1995, writ denied) (even when employer's conduct rises to level of
illegality, except in most unusual of cases, it is not sort of conduct, deplorable as it may sometimes be, that constitutes
extreme and outrageous conduct); see also Sebesta v. Kent Elecs. Corp., 886 S.W.2d 459, 462-63 (Tex. App.-Houston [1st
Dist.] 1994, writ denied) (employer's arranging exit parade of terminated employee for busiest part of day, as matter of law,
did not constitute extreme and outrageous conduct). We hold the trial court did not err in granting appellees' motion for
summary judgment on the issue of intentional infliction of emotional distress.

Reyna's sixth, seventh, and eighth points of error are overruled. 





C. Directed Verdict


A court may instruct a verdict if no evidence of probative force raises a fact issue on the material questions in the suit. See
Szczepanik v. First S. Trust Co., 883 S.W.2d 648, 649 (Tex. 1994). A directed verdict for a defendant may be proper in
two situations. First, a court may direct a verdict when a plaintiff fails to present evidence raising a fact issue essential to
the plaintiff's right of recovery. Prudential Ins. Co. of Am. v. Fin. Rev. Servs., Inc., 29 S.W.3d 74, 77 (Tex. 2000)
(citingLatham v. Castillo, 972 S.W.2d 66, 67-68, 70-71 (Tex. 1998)). Second, a trial court may direct a verdict for the
defendant if the plaintiff admits or the evidence conclusively establishes a defense to the plaintiff's cause of action. See
Villegas v. Griffin Indus., 975 S.W.2d 745, 748-49 (Tex. App.-Corpus Christi 1998, pet. denied); Davis v. Mathis, 846
S.W.2d 84, 86 (Tex. App.-Dallas 1992, no writ). On review, we examine the evidence in the light most favorable to the
party against whom the verdict was rendered and disregard all contrary evidence and inferences. Qantel Bus. Sys. v.
Custom Controls, 761 S.W.2d 302, 303-04 (Tex. 1988); Villegas, 975 S.W.2d at 749. When reasonable minds may differ
as to the truth of controlling facts, the issue must go to the jury. Collora v. Navarro, 574 S.W.2d 65, 68 (Tex. 1978);
Villegas, 975 S.W.2d at 749. When no evidence of probative force on an ultimate fact element exists, or when the
probative force of testimony is so weak that only a mere surmise or suspicion is raised as to the existence of essential facts,
the trial court has a duty to instruct the verdict. Villarreal v. Art Inst. of Houston, Inc., 20 S.W.3d 792, 796 (Tex.
App.-Corpus Christi 2000, no pet.). The reviewing court may affirm a directed verdict even if the trial court's rationale for
granting the directed verdict is erroneous, provided it can be supported on another basis. Id. (citing Kelly v. Diocese of
Corpus Christi, 832 S.W.2d 88, 89 (Tex. App.-Corpus Christi 1992, writ dism'd w.o.j.)).

1. Tortious Interference


In his first and second points of error, Reyna contends the trial court erred in granting a directed verdict regarding his
tortious interference with a contract claim against appellees. Reyna argues that appellees interfered with contracts he had
with the vendors. Specifically, he asserts that appellees interfered with his contracts with Microware and Hallmark by
delaying payment on their invoices. 

To sustain a claim of tortious interference with a contract, the plaintiff must prove: (1) a contract subject to interference
exists; (2) a willful and intentional act of interference with the contract occurred; (3) the interference proximately caused
injury; and (4) actual damages or loss. Prudential Ins. Co. of Am., 29 S.W.3d at 77. 

In his brief, Reyna states "Penoli on behalf of the bank delayed payment on the special purchase orders to Microware and
Hallmark despite Appellant's urgings and requests . . . ." The actions of a corporate agent on behalf of the corporation are
deemed the corporation's acts. Holloway v. Skinner, 898 S.W.2d 793, 795 (Tex. 1995). An officer or director may not be
held liable in damages for inducing the corporation to violate a contractual obligation, provided that the officer or director
acts in good faith and believes that what he does is for the best interest of the corporation. Id. (citing Maxey v. Citizens
Nat'l Bank, 507 S.W.2d 722, 726 (Tex. 1974)). As the comptroller of FNB, Penoli was an officer and any actions he made
on behalf of FNB in not paying the invoices are deemed the actions of FNB. Therefore, the trial court did not err in
directing a verdict against Reyna on his action against Penoli for tortious interference.

Further, in his claim against FNB for tortious interference, Reyna has failed to prove actual damages. In his brief, Reyna
alleges that he was damaged by FNB's interference with the contracts because he was never able to sell Unisys or
Microware products again. When asked if he ever sold Unisys equipment after his termination with FNB, he said that he
had not because "I didn't think I would be able to." When asked if he ever sold equipment that was acquired from
Microware after October 14, 1992, he said that he had not because "I didn't think I could." He based this belief upon his
"common sense and experience that I didn't think they would sell to me for all the trouble we had in the past." When asked
if his experience with FNB had a negative effect on his ability to sell Hallmark obtained equipment, Reyna stated "yes"
because he "believe[d] it made it impossible" based upon his belief that he "didn't think they would sell to me after the
trouble we had in the past, the same as Microware." On cross-examination, Reyna testified that his belief that he could not
do business with the vendors after his termination from FNB was "speculation based on my common sense," and
speculation because he never called them to see if he could do business with them. Reyna never made an attempt to do
business with Unisys, Microware, or Hallmark after his termination from FNB, thus, he has not proven that he was
damaged. We hold the trial court did not err in ordering a directed verdict on Reyna's claim that appellees tortiously
interfered with his contracts with Unisys, Hallmark, and Microware.

2. Contract for Employment


In his third and fourth points of error, Reyna contends the trial court erred in granting a directed verdict on his breach of
contract for employment claim. Specifically, Reyna asserts that the directed verdict should not have been based on the
statute of frauds because the contract was performable within one year and he detrimentally relied upon FNB's promise of
future employment. (4)

Reyna alleged that he had an oral agreement with FNB that: (1) Reyna would purchase computer equipment for FNB from
the vendors, (2) sell it to FNB at cost, (3) install the equipment at FNB, (4) receive a $25.00 hourly rate, (5) FNB would
forgive Reyna's $22,000.00 note at the bank, and (6) Reyna would be named head of the computer division at FNB. Reyna
asserts FNB breached this contract by firing him.

At trial, appellees moved for a directed verdict on Reyna's "allegation that he was entitled to future employment" based
upon the statute of frauds. Reyna asserted that he relied upon FNB's representations for future employment and fully
performed by obtaining the equipment and making FNB his sole client. The trial court granted the directed verdict based
upon the statute of frauds.

Texas follows the doctrine of employment-at-will, and employment for an indefinite term may be terminated at will and
without cause. Schroeder v. Tex. Iron Works, Inc., 813 S.W.2d 483, 489 (Tex. 1991). Absent a specific contract term to
the contrary, this doctrine allows an employee to quit or be fired without liability on the part of the employer or employee,
with or without cause. Rios v. Tex. Commerce Bancshares, Inc., 930 S.W.2d 809, 814 (Tex. App.-Corpus Christi 1996,
writ denied); Massey v. Houston Baptist Univ., 902 S.W.2d 81, 83 (Tex. App.-Houston [1st Dist.] 1995, writ
denied);Reynolds Mfg. Co. v. Mendoza, 644 S.W.2d 536, 538 (Tex. App.-Corpus Christi 1982, no writ). A discharged
employee who asserts that the parties have contractually agreed to limit the employer's right to terminate the employee at
will has the burden of proving an express agreement or written representation to that effect. Massey, 902 S.W.2d at 83. To
rebut the presumption of employment at-will, an employment contract must directly limit in a "meaningful and special
way" the employer's right to terminate the employee without cause. Id. At-will employees may contract with their
employers on any matter except those which would limit the ability of either employer or employee to terminate the
employment at-will. Light v. Centel Cellular Co. of Tex., 883 S.W.2d 642, 644 (Tex. 1994).

If an employment contract is to extend beyond a year, it must be in writing in accordance with the statute of frauds. Tex.
Bus. & Comm. Code Ann. § 26.01 (b)(6) (Vernon 1987); see Schroeder, 813 S.W.2d at 489. For an agreement to fall
within the statute of frauds requirement that an agreement which is not performed within one year from the making of the
agreement must be in writing, it must appear from the terms of the agreement that performance cannot be completed within
one year. Int'l Piping Sys., Ltd. v. M.M. White & Assocs., Inc., 831 S.W.2d 444 (Tex. App.-Houston [14th Dist.] 1992, writ
denied). The promise of permanent or lifetime employment, or the promise of employment until retirement age, is the type
of employment contract that must be reduced to writing to be enforceable. Schroeder, 813 S.W.2d at 489. 

Assuming, arguendo, that Reyna was able to install all the computer equipment and meet all the computer needs of FNB
within one year, thus not violating the statute of frauds, we conclude that Reyna's breach of contract claim fails,
nevertheless, because he was an employee at-will. FNB was free to discharge Reyna at any time, just as he was free to
leave.

Reyna testified he felt that he was an employee of FNB even though FNB never used the term "employee" in their
discussions. He also said that FNB "told [him] they were going to offer [him] a job as part of the agreement." Reyna
expected the employment as head of the computer department to be a permanent position that would "always be needed,"
although he did not feel that it would be a "lifetime position" for himself. Therefore, Reyna recognized the at-will nature of
the employment and his ability to leave FNB. Penoli testified that Reyna refused to call the vendors to explain the delay in
payment and if "[Penoli] was going to have to do [Reyna's] job, then [Penoli] didn't need his services."

The evidence establishes that Reyna obtained the computer equipment, but at no cost to himself because FNB was
responsible for full payment of the equipment. Reyna installed the equipment and provided computer services just as the
agreement indicated. FNB paid Reyna for his services, and when a disagreement occurred, FNB terminated Reyna's
employment. The oral agreement between FNB and Reyna for the purchase-installation-upkeep of the computer equipment
does not effect a modification of the at-will relationship because the oral agreement did not constitute an express agreement
limiting, in a meaningful and special way, FNB's right to terminate Reyna. See Cote v. Rivera, 894 S.W.2d 536, 540 (Tex.
App.-Austin 1995, no writ). Accordingly, we hold FNB did not breach the oral agreement by terminating Reyna's
employment. Reyna's third and fourth points of error are overruled. 

D. Exclusion of Evidence


In his fifth point of error, Reyna contends the trial court erred by excluding exhibit no. 19. Exhibit no. 19 is a phone
message taken by Albert Chapa, an accountant at FNB, on October 13, 1992 for Reyna. The message was from Bill
Corcoran at Microware saying that he had contacted Penoli and Robert Gandy and was awaiting a phone call from them,
but if there was no return call, he would be in contact with his attorney to file suit. Reyna offered the exhibit to show that
"numerous collection calls were made to [Reyna] to seek payment on the Hallmark and Microware accounts." FNB
objected that it was hearsay, and the trial court sustained the objection and excluded the exhibit. Reyna argues that
"admission of [the exhibit] would have been seen by the jury as evidence created by the bank that, just as [Reyna] alleged,
demands for payment and threats of litigation were being made, and that key personnel at FNB . . . were aware."

The admission and exclusion of evidence is committed to the trial court's sound discretion. Gee v. Liberty Mut. Fire Ins.
Co., 765 S.W.2d 394, 396 (Tex. 1989). A trial court abuses its discretion when it acts without regard for any guiding rules
or principles. City of Brownsville v. Alvarado, 897 S.W.2d 750, 754 (Tex. 1995); Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241-42 (Tex. 1985).

To obtain reversal of a judgment based on error in the admission or exclusion of evidence, appellant must show that the
trial court did in fact commit error, and that the error probably caused the rendition of an improper judgment. Tex. R. App.
P. 44.1(a)(1); McCraw v. Maris, 828 S.W.2d 756, 758 (Tex. 1992); Gee, 765 S.W.2d at 396; Downan v. Tex. Gulf Shrimp
Co., 846 S.W.2d 506, 512 (Tex. App.-Corpus Christi 1993, writ denied).

After the various motions for summary judgment and directed verdicts, the only issue left to be presented to the jury was,
"Did FNB fail to comply with the agreement, if any, to pay Ricardo Reyna for consulting services?" The trial court's
exclusion of a phone message that allegedly demanded payment and made threats of litigation for unpaid invoices to the
vendors could not have caused rendition of an improper judgment on the issue before the jury - the payment of Reyna's
consulting services. Accordingly, it is not necessary to review Reyna's contention that the trial court erred in excluding the
exhibit based on a hearsay objection. Tex. R. App. P. 47.1. Reyna's fifth point of error is overruled.

E. Factual Sufficiency


In his ninth point of error, Reyna contends the trial court erred in the signing the final judgment because the verdict was
against the great weight and preponderance of the evidence. Reyna asserts the evidence presented at trial established that
FNB never paid him for his consulting services.

When we review a factual sufficiency point of error, we consider, weigh, and examine all of the evidence which supports or
undermines the jury's finding. Plas-Tex, Inc. v. United States Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989). We review
the evidence, keeping in mind that it is the jury's role, not ours, to judge the credibility of the evidence, to assign the weight
to be given to testimony, and to resolve inconsistencies within or conflicts among the witnesses' testimony. Corpus Christi
Teachers' Credit Union v. Hernandez, 814 S.W.2d 195, 197 (Tex. App.-San Antonio 1991, no writ). We then set aside the
jury's finding only when we find that the evidence standing alone is too weak to support the finding or that the finding is so
against the overwhelming weight of the evidence that it is manifestly unjust and clearly wrong. Ortiz v. Jones, 917 S.W.2d
770, 772 (Tex. 1996); Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965). In doing so, the court of appeals must "detail the
evidence relevant to the issue" and "state in what regard the contrary evidence greatly outweighs the evidence in support of
the verdict." Dow Chem. Co. v. Francis, 44 Tex. Sup. Ct. J. 664, 666-67, 2001 Tex. LEXIS 37 (April 26, 2001) (per
curiam).

The jury answered "no" to the question "Did FNB fail to comply with the agreement, if any, to pay Ricardo Reyna for
consulting services?" The charge also asked, "What sum of money, if any, would fairly and reasonably compensate
Ricardo Reyna for his damages, if any, that resulted from such failure to comply." The jury answered "$0."

During the testimony of Reyna, various checks written to him from FNB were admitted into evidence. Saul Ortega, FNB's
accounting officer, testified concerning a letter he wrote to Reyna. In the letter, dated October 28, 1992, Ortega enclosed
copies of checks sent to Hallmark and Microware for payment of the invoices. He also stated:

Also, find enclosed check #51203 for $4,952.44, which represents payment of ½ of the remaining time payable to you for
August, September and October. Please provide me with your time cards to substantiate your time worked as we
previously agreed. 



Ortega testified that Reyna never responded to his letter.



Reyna testified that he did receive partial payment for the hours he had worked. He stated "I recall the Bank owed me
approximately six thousand dollars of the equipment and hours. I don't recall exactly how much of that money was for
hours," and at the time of trial, he had not been paid the six thousand dollars.

After reviewing the entire record, we hold the evidence is factually sufficient to support the jury's finding that FNB
complied with the agreement to pay Reyna for his consulting services. Reyna's ninth point of error is overruled.

F. Costs


In his tenth point of error, Reyna contends the trial court erred in assessing all costs against him because FNB did not
prevail on its counterclaim for Reyna's failure to pay the promissory note.

Allocation of costs is a matter for the trial court's discretion and cannot be overturned on appeal unless the trial court
abused its discretion. Univ. of Houston-Clear Lake v. Marsh, 981 S.W.2d 912, 914 (Tex. App.-Houston [1st Dist.] 1998,
no pet.). Texas Rule of Civil Procedure 131 provides, "the successful party to a suit shall recover of his adversary all costs
incurred therein, except where otherwise provided." A trial judge must allocate costs according to the provisions of Texas
Rule of Civil Procedure 131 unless it makes a finding of good cause. Tex. R. Civ. P. 141. Rule 303 of the Texas Rules of
Civil Procedure states:

Whenever a counterclaim is pleaded, the party in whose favor final judgment is rendered shall also recover the costs, unless
it be made to appear on the trial that the counterclaim of the defendant was acquired after the commencement of the suit, in
which case, if the plaintiff establishes a claim existing at the commencement of the suit, he shall recover his costs.



Tex. R. Civ. P. 303. 

FNB counterclaimed for Reyna's failure to pay a promissory note, dated March 25, 1992, in the principal sum of
$29,157.83, wherein he promised to make monthly payments to FNB starting on April 25, 1992. At trial, Reyna moved for
a directed verdict because FNB did not produce the original note and the evidence was incomplete as to the amount actually
owed on the note. FNB's counsel admitted that they had not presented evidence on the amount due on the note. The trial
court then ordered a directed verdict against FNB on the counterclaim.

 It is apparent from the record that Reyna did not prevail on any of his claims. But on appeal, he asserts that since FNB did
not prevail on its counterclaim, then some of the costs should be assessed against it even though it was the successful party.
Given that the counterclaim was in fact acquired before the suit, and Reyna did not prevail on any of his claims, we
conclude that rule 303 does not apply and the trial court correctly assessed all costs against Reyna. Appellant's tenth point
of error is overruled.

The judgment of the trial court is affirmed.



FEDERICO G. HINOJOSA

Justice



Publish. Tex. R. App. P. 47.3.



Opinion delivered and filed this 



the 21st day of June, 2001.

1. Retired Justice Melchor Chavez, assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to
Tex. Gov't Code Ann. § 74.003 (Vernon 1998).

2. Before the agreement, Reyna was self-employed and did business as C.R.T. Computer Sales.

3. Throughout this opinion, Unisys, Hallmark, and Microware will collectively be referred to as "the vendors."

4. Reyna is asserting promissory estoppel. Promissory estoppel is a cause of action available to a promisee who has acted
to his detriment in reasonable reliance on an otherwise unenforceable promise. David McDavid Nissan, Inc. v. Subaru of
Am., Inc.,, 10 S.W.3d 56, 73 (Tex. App.-Dallas 1999, pet. granted) (citing Wheeler v. White, 398 S.W.2d 93, 96-96 (Tex.
1965)).