

# NUMBER 13-20-00052-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JIMMY JUSTIN, Appellant,

v.

VALLEY GRANDE INSTITUTE
FOR ACADEMIC STUDIES, Appellee.

### On appeal from the County Court at Law No. 6
### of Hidalgo County, Texas.

## MEMORANDUM OPINION

### Before Justices Benavides, Longoria, and Tijerina
### Memorandum Opinion by Justice Longoria

In this employment dispute, appellant Jimmy Justin appeals a directed verdict in favor of appellee Valley Grande Institute for Academic Studies (the School). By three issues Justin argues that the trial court erroneously granted the School's oral motion for a directed verdict (1) on a breach of a written employment contract claim where an

original, written document exists that contains all essential terms of employment and is signed by all parties, and even if the original, written document is not an employment contract as a matter of law, (2) the School ratified it, or (3) the School's subsequent payment of the agreed wages and benefits for which Justin performed work for several months established a written employment agreement. We affirm.

## I. BACKGROUND

In January of 2016, the School hired Justin as a part-time nursing instructor, and he signed an employment agreement which listed his employment as "at[-]will". About three months later, the School approached Justin about becoming its vocational nursing director given his educational background. Since the Texas Board of Nursing (BON) must approve the School's nursing director, Mari Aviles, the School's director, emailed BON's nursing consultant for education Janice Hooper informing her that the School's previous nursing program director had resigned. Aviles further explained that the School was recommending Justin as interim director until he could submit the required BON forms and the School received BON's approval. She also included Justin's resume in the email to Hooper. Hooper subsequently questioned whether Justin had been teaching for one year, and explained that the BON's rules require one year of teaching experience in a nursing program. Aviles then met with Justin to discuss the BON's concerns, and Aviles provided subsequent instructor experience to the BON. However, Justin eventually learned that he did not get approved. Justin met with Anabell Cardona, the School's

president, on at least two separate occasions, and presented her with the following undated document (the Compensation Guidelines), which they both signed:[1]



Additionally, after providing Cardona with the Compensation Guidelines, Justin presented another document dated May 24, 2016 (the May 24th document), which both parties signed which stated: "I have agreed to a two year term employment agreement with Valley Grande Institute which will be renewed as per the conditions of the employment contract."

---

[1] The trial court admitted the Compensation Guidelines on October 9, 2019, at the bench trial.

Since the School was required to have a nursing director, Olivia Pena assumed the role of interim director, and her role included mentoring Justin until he met the BON's teaching qualifications. Until such time, the School gave Justin the position of vocational nursing assistant director and instructor. Additionally, around May of 2016, the School paid Justin the salary listed under the Compensation Guidelines. In June of 2016, Pena gave Justin a staff evaluation which included both points of praise and concern. Approximately two months later, the School issued Justin a performance correction notice that described several infractions which he believed were invalid, and he contended the School was supposed to give him a corrected notice. The performance correction notice also included a plan for improvement; however, on September 23, 2016, Justin received a notice of termination, which stated that he failed to correct his performance, and that he was terminated.

A little less than a year later, Justin sued the School for breach of contract among other claims, and a two-day bench trial was held on October 9, 2019, and October 10, 2019, in which Justin only proceeded on his breach-of-contract claim. Justin called two witnesses, himself and Cardona. At trial, Justin conceded that: he was never put in the position of the School's nursing director; after he presented the Compensation Guidelines to Cardona, he provided a sample contract to her but she never responded; and Cardona "[w]anted a contract that met the goals she wanted also." Cardona conceded that she agreed to the Compensation Guidelines, but she did not see it as a contract, and instead characterized it as a worksheet. After Justin rested, the School moved for an oral directed

4

verdict, and the trial court made the following remarks but did not rule on the motion at that time:

> The Court: [B]ut—okay, clearly there was an intent to have a contract at some points, okay? They were negotiating to try to get a contract. Whether Plaintiff's Exhibit Number 1 is a contract, that is the issue. At this point I do not believe that it was a contract, okay? I do not believe it was a contract. I think it was a negotiation based on what they saw on the document[.] I saw on the document that they were negotiating for a contract. Not that it was the actual contract itself right then and there but a tool towards a contract. Whether there was a meeting of the minds on both parties, I do not think there was. I do not dispute that Mr. Justin believed that was the contract, nor do I dispute that Ms. Cardona thought it was only a proposal for a contract. I think they both actually believed that. Whether that document constitutes a contract, I do not believe it does that on its face. You know, looking at the four corners, I do not believe it constitutes the actual contract. I do believe that they were negotiating a contract and working towards that, okay? I do believe that. And I do believe that—

> [Justin]: Can I ask a question, Judge?

> The Court: —that Mr. Justin was trying to better the [S]chool, and Ms. Cardona was trying to get him on board to better the [S]chool. I think that was—I think there was a meeting of the mind in that aspect, that they were both trying to get that accomplished. I don't think they actually did accomplish it. You had a question.

On October 24, 2019, the trial court granted the School's oral motion for directed verdict, and a final judgment was entered on November 25, 2019. This appeal followed.

## II. STANDARD OF REVIEW

The test for review of a directed verdict is the same as a review of legal sufficiency. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005); *see also Guevara v. Gamboa*, No. 13-20-00023-CV, 2021 WL 727383, at *2 (Tex. App.—Corpus Christi–Edinburg Feb.

25, 2021, no pet.) (mem. op.). On review, we examine the evidence in the light most favorable to the party against whom the verdict was rendered and we disregard all contrary evidence and inferences. *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 234 (Tex. 2004); *Villegas v. Griffin Indus.*, 975 S.W.2d 745, 749 (Tex. App.—Corpus Christi–Edinburg 1998, pet. denied).

Generally, in two situations, a directed verdict for a defendant may be proper. *Prudential Ins. Co. of Am. v. Fin. Rev. Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000); *see also Brewer v. Lowe's Home Ctrs., Inc.*, No. 12-14-00155-CV, 2015 WL 5965287, at *1 (Tex. App.—Tyler Oct. 14, 2015, no pet.) (mem. op.). First, if a plaintiff fails to present evidence raising a fact issue essential to the plaintiff's right of recovery, a court may direct a verdict. *Prudential Ins. Co. of Am*, 29 S.W.3d at 77*; see also Castillo v. Guajardo*, No. 13-01-00142-CV, 2003 WL 21025854, at *3 (Tex. App.—Corpus Christi–Edinburg May 8, 2003, pet. denied) (mem. op.). Second, a trial court may direct a verdict for the defendant if the plaintiff admits, or the evidence conclusively establishes, a defense to the plaintiff's cause of action. *Prudential Ins. Co. of Am.*, 29 S.W.3d at 77; *see also Castillo*, 2003 WL 21025854, at *3. The issue must go to the jury when reasonable minds may differ as to the truth of controlling facts. *Collora v. Navarro*, 574 S.W.2d 65, 68 (Tex. 1978); *Villegas*, 975 S.W.2d at 749.

The trial court has a duty to instruct the verdict when no evidence of probative force on an ultimate fact element exists or when the probative force of slight testimony is so weak that only a mere surmise or suspicion is raised as to the existence of essential facts. *Villarreal v. Art Inst. of Hous., Inc.*, 20 S.W.3d 792, 796 (Tex. App.—Corpus Christi–

6

Edinburg 2000, no pet.). A directed verdict may be affirmed even if the trial court's rationale for granting the directed verdict is erroneous, so long as it can be supported on another basis. *Reyna v. First Nat. Bank in Edinburg*, 55 S.W.3d 58, 69 (Tex. App.—Corpus Christi–Edinburg 2001, no pet.); *see also Guijarro v. Charles P. Johnson, Inc.*, No. 13-19-00268-CV, 2021 WL 1133614, at *7 (Tex. App.—Corpus Christi–Edinburg Mar. 25, 2021, pet. denied) (mem. op.).

### III.    EMPLOYMENT CONTRACT

By his first issue, Justin contends that the trial court erroneously granted the School's oral motion for a directed verdict on his breach of a written employment contract claim because an original, written document exists that contains all essential terms of employment and is signed by all parties. Justin asserts that he presented evidence to support each element of an enforceable employment contract, but focuses his argument on the mutual assent and consideration elements.

### A.    Applicable Law

The breach of contract elements are (1) the existence of a valid contract, (2) the plaintiff performed, (3) the defendant breached the contract, and (4) the plaintiff was damaged as a result of the breach. *Williams v. First Tenn. Nat. Corp.*, 97 S.W.3d 798, 802 (Tex. App.—Dallas 2003, no pet.); *see also Burkett v. Ulrich Barn Builders, LLC*, No. 10-11-00392-CV, 2012 WL 851665, at *4 (Tex. App.—Waco Mar. 21, 2012, no pet.) (mem. op.). To prove a valid and enforceable contract, a party must establish the following elements: (1) an offer, (2) acceptance, (3) mutual assent, (4) execution and delivery of the contract with the intent that it be mutual and binding, and (5) consideration supporting

the contract. *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007); *see also Zavala v. Strack*, No. 13-19-00201-CV, 2020 WL 3116515, at *5 (Tex. App.—Corpus Christi–Edinburg June 11, 2020, no pet.) (mem. op.). Evidence of mutual assent in written contracts typically consists of signatures of the parties and delivery with the intent to bind. *Sonnichsen*, 221 S.W.3d at 635.

The employment-at-will doctrine is followed in Texas, and employment for an indefinite term may be terminated at will and without cause. *Reyna*, 55 S.W.3d at 71. "Absent a specific contract term to the contrary, this doctrine allows an employee to quit or be terminated without liability on the part of the employer or the employee, with or without cause." *Williams*, 97 S.W.3d at 803. If a discharged employee asserts that the parties have contractually agreed to limit the employer's right to terminate the employee at will, such employee has the burden of proving an express agreement or written representation to that effect. *Demunbrun v. Gray*, 986 S.W.2d 627, 628 (Tex. App.—El Paso 1998, no pet.).

To avoid the employment-at-will doctrine, an employee has the burden of proving he or she and the employer had a contract that directly limited in a "meaningful and special way" the employer's right to terminate the employee. *See Massey v. Houst. Baptist Univ.*, 902 S.W.2d 81, 83 (Tex. App.—Houston [1st Dist.] 1995, writ denied); *see also Phelps Dodge Ref. Corp. v. Luera*, No. 08-02-00179-CV, 2003 WL 1361281, at *4 (Tex. App.—El Paso Mar. 20, 2003, pet. denied) (mem. op.). To modify the at-will relationship, an employer must unequivocally manifest a definite intent in the contract to be bound not to terminate an employee except under clearly specified circumstances. *See Midland Jud.*

8

*Dist. Cmty. Supervision and Corrs. v. Jones*, 92 S.W.3d 486, 487 (Tex. 2002); *see also*

*Morales v. Info. Referral Res. Assistance, Inc.*, No. 13-09-00290-CV, 2011 WL 2090233,

at *2 (Tex. App.—Corpus Christi–Edinburg May 26, 2011, no pet.) (mem. op.).

## B.     Analysis

Justin asserts that the School limited its ability to terminate him for at least two

years because the parties agreed to a fixed two-year term that it later ratified. We

disagree. A plain reading of the Compensation Guidelines shows a two-year renewal term

but is silent with respect to an initial term of service, as it states: "Goal: Automatic

employee contract renewal (2 years) for NCLEX pass rates at or over 80%."[2] Stated

otherwise, Justin's alleged initial term of service is left to the parties' discretion or is

indefinite. *See Robert J. Patterson, P.C. v. Leal*, 942 S.W.2d 692, 694 (Tex. App.—

Corpus Christi–Edinburg 1997, writ denied) ("The established rule is that employment for

an indefinite term may be terminated at will and without cause."); *see also Luera*, 2003

WL 1361281, at *5 ("When a term of service is left to the discretion of either party, or the

term is left indefinite . . . either may end the employment at will without cause."). The lack

of an initial term becomes readily apparent when searching for a start date in the

Compensation Guidelines.

Additionally, while the May 24th document references a two-year term, the School

is not obligated thereunder to employ Justin for such term. *See generally, Hussong v.*

---

[2] We note that Justin has argued that there is an initial term of two years and a renewal term of two years if certain conditions are met, but a plain reading of the Compensation Guidelines shows that two years is listed once—immediately after the word "renewal." He specifically argues: "Because the parties negotiated, agreed, and *signed* an agreement with [a] fixed term of two (2) years, with an automatic extension if certain milestones were met, [the School] limited its ability to terminate Justin for at least two (2) years, and potentially two (2) more should Justin meet certain agreed upon conditions." (emphasis in original).

*Schwan's Sales Enters., Inc.*, 896 S.W.2d 320, 324 (Tex. App.—Houston [1st Dist.] 1995, no writ) (stating in the employment contract context that "[l]anguage used by parties should be accorded its plain, grammatical meaning unless it definitely appears that the intention of the parties would thereby be defeated"). Rather, at best, it places an obligation only upon Justin: "I have agreed to a two[-]year term employment agreement with [the School] which will be renewed as per the conditions of the employment contract."

Justin additionally points to the salary in the Compensation Guidelines to show that the School limited its ability to terminate him. However, the Compensation Guidelines do not state a specific duration upon which such salary is based. *See Rios v. Tex. Com. Bancshares, Inc.*, 930 S.W.2d 809, 815 (Tex. App.—Corpus Christi–Edinburg 1996, writ denied) (finding in part that a dated letter did not limit in any way the employer's right to terminate the employee at will where it did not specify a beginning date or state a specific duration of time upon which the salary was based). Additionally, Justin's salary is not enough to alter the at-will nature of his employment relationship with the School. *See Ed Rachal Found. v. D'Unger*, 207 S.W.3d 330, 332 (Tex. 2006) ("Standing alone, an agreement to pay at a stated rate is not enough; if it were, there would be very few at-will employees."). Further, while we recognize the general rule that "[a] hiring based on an agreement of an annual salary limits in a meaningful and special way the employer's prerogative to discharge the employee during the dictated period of employment[,]" we do not find it applicable to this set of facts given that the Compensation Guidelines do not contain an initial period of employment linking Justin's salary. *See Larson v. Fam.*

*Violence & Sexual Assault Prevention Ctr. of S. Tex.*, 64 S.W.3d 506, 518 (Tex. App.—Corpus Christi–Edinburg 2001, pet. denied).

Moreover, while a party's signature typically shows mutual assent, *Wright v. Hernandez*, 469 S.W.3d 744, 756–57 (Tex. App.—El Paso 2015, no pet.), under this set of facts and considering the entirety of the Compensation Guidelines, *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 239 (Tex. 2016), we do not find Cardona's signature indicates her intent to create a mutual binding agreement or limit the School's ability to terminate Justin where it appeared directly underneath the bolded language that says: "Verbal Acceptance of the job offer leading to a Formal Signed Contract. (based upon review and approval from both of our employment advisors.)." *See Rios*, 930 S.W.2d at 815 (finding dated letter did not limit in any way the right of the employer to terminate the employee at will where in part the dated letter clearly states that it is confirming an offer); *see also Shields v. Delta Lake Irr. Dist.*, No. 13-01-622-CV, 2006 WL 1280863, at *9 (Tex. App.—Corpus Christi–Edinburg May 11, 2006, pet. denied) (mem. op.) ("Courts have long held that an agreement to enter into negotiations in the future is unenforceable."); *cf. Hi Tech Luxury Imports, LLC v. Morgan*, No. 03-19-00021-CV, 2019 WL 1908171, at *2 (Tex. App.—Austin Apr. 30, 2019, no pet.) (mem. op.) (explaining that the following language, that appeared above the signature lines of both parties indicates that the signatures of both parties were required for the agreement to be enforceable: "MY SIGNATURE BELOW ATTESTS TO THE FACT THAT I HAVE READ, UNDERSTAND, AND AGREE TO BE LEGALLY BOUND TO ALL OF THE ABOVE TERMS").

Lastly, we do not see any express limitation in the Compensation Guidelines or the May 24th document on the School's ability to terminate Justin or the School's unequivocal intent not to terminate his employment. See *Massey,* 902 S.W.2d at 83–84 (ultimately concluding that a letter was insufficient to alter the at-will status of the employee's employment where it did not contain any reference to lifetime employment or impose any other express limitation on the employer's right to terminate employee); *see also Burkett,* 2012 WL 851665, at *5–6 (finding that there was no language in the memorandum at issue, that provided a summary of employee's medical allowance, vacation time, and salary, which altered the at-will employment relationship). Therefore, because the School did not manifest a definite intent not to terminate Justin, we do not find the at-will relationship was altered, and we overrule Justin's first issue.[3] *See Midland Judicial Dist. Cmty. Supervision and Corrs.,* 92 S.W.3d at 487–88; *see also Morales,* 2011 WL 2090233, at *2.

### IV. RATIFICATION

By his second issue, Justin contends that even if the Compensation Guidelines is not an employment contract, the School ratified the Compensation Guidelines when Cardona signed the May 24th document and when it paid Justin the salary contemplated under the Compensation Guidelines until his termination. The School responds that Justin failed to preserve this issue since he did not plead ratification nor raise the issue at trial. We find that Justin has preserved this issue for our review because he raised ratification

---

[3] Because we have determined that the Compensation Guidelines and the May 24th document do not alter the at-will relationship between the parties, we do not address Justin's additional argument that the Compensation Guidelines contains evidence of adequate and sufficient consideration to support and employment contract. *See* TEX. R. APP. P. 47.1.

in his trial brief filed on the first day of trial which was also referenced in his opening statement. Thus, we address the merits of the issue.

## A. Applicable Law

"Ratification occurs if a party recognizes the validity of a contract by acting or performing under the contract or by otherwise affirmatively acknowledging it." *Barrand, Inc. v. Whataburger, Inc.*, 214 S.W.3d 122, 146 (Tex. App.—Corpus Christi–Edinburg 2006, pet. denied). In other words, if a party by its conduct recognizes an agreement as valid, having knowledge of all relevant facts, then it ratifies the agreement. *Missouri Pac. R. Co. v. Lely Dev. Corp.*, 86 S.W.3d 787, 792 (Tex. App.—Austin 2002, pet. dism'd). Ratification may be inferred by a party's course of conduct and does not need to be shown by express word or act. *Motel Enters., Inc. v. Nobani*, 784 S.W.2d 545, 547 (Tex. App.—Houston [1st Dist.] 1990, no writ). Once a contract is ratified, a party may not later withdraw its ratification. *Mo. Pac. R. Co.*, 86 S.W.3d at 792. Whether a party has ratified a contract may be determined as a matter of law if the evidence is not controverted or is incontrovertible. *Mission Petroleum Carriers, Inc. v. Kelley*, 449 S.W.3d 550, 554 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

A party cannot avoid an agreement by claiming there was no intent to ratify after he or she has accepted the benefits of the agreement. *Id.* at 553–54; *see also HEB Grocery Co. L.P. v. Perez*, No. 13-18-00063-CV, 2019 WL 3331466, at *3 (Tex. App.—Corpus Christi–Edinburg July 25, 2019, no pet.) (mem. op.). "When the benefits received are the direct, certain, and proximate result of an agent's unauthorized act, retention of those benefits after the principal acquires knowledge of the transaction constitutes

13

affirmance of the act and ratification of the transaction." *Land Title Co. of Dall., Inc. v. F.M. Stigler, Inc.*, 609 S.W.2d 754, 757 (Tex. 1980). The acceptance of benefits is a quintessential indicator of ratification, and it will support a finding of ratification as a matter of law in many cases. *BPX Op. Co. v. Strickhausen*, 629 S.W.3d 189, 200 (Tex. 2021); *see also Angell v. Culpepper*, No. 03-19-00778-CV, 2021 WL 5018758, at *8 (Tex. App.—Austin Oct. 29, 2021, no pet. h.) (mem. op.).

## B.    Analysis

Although Justin contends that Cardona's signing of the May 24th document and the School's payments to Justin of the salary stated under the Compensation Guidelines amount to ratification of the Compensation Guidelines, we do not find ratification because the record reveals that the School never retained, received, or accepted the benefit of Justin as its nursing director—the very position allegedly contemplated under the Compensation Guidelines. *See Pitman v. Lightfoot*, 937 S.W.2d 496, 523 (Tex. 1996) (explaining that there was evidence that each appellant had knowledge of the transaction, conducted himself in recognition of its existence, and retained the beneficial right to increase his holdings commensurate with the stock purchase)*; Kelley*, 449 S.W.3d at 554–55 (concluding that the appellant could not avoid the arbitration agreement because he accepted benefits under the plan after he became aware that the agreement was invalid due to procedural unconscionability); *see also Perez*, 2019 WL 3331466, at *3 (appellee's express actions of signing and dating forms acknowledging the arbitration clause and later by accepting benefits under a policy requiring arbitration, illustrate appellee's ratification of the arbitration agreement). Indeed, the record reveals the

14

opposite, in that the School had to engage someone else as its interim nursing director. Accordingly, we overrule Justin's second issue.

## V. WAGES AND BENEFITS

By his third issue, Justin contends that even if the Compensation Guidelines and the May 24th document do not create a written employment contract as a matter of law, the School's subsequent payment of the agreed upon wages and benefits for which Justin worked for several months establish a written employment agreement. However, other than stating his third issue under the issues presented section, Justin has not presented any argument or authorities on this issue. *See* TEX. R. APP. P. 38.1(i). Therefore, Justin has waived this issue. *Id.* We overrule his final issue.

## VI. CONCLUSION

We affirm the trial court's judgment.

NORA L. LONGORIA
Justice

Delivered and filed on the
29th day of December, 2021.

15