**Charles WILLIAMS, Appellant,**

v.

**FIRST TENNESSEE NATIONAL CORPORATION, a Tennessee Corporation, and First Horizon Home Loan Corporation f/k/a FT Mortgage Companies, Appellees.**

No. 05–02–00215–CV.

Court of Appeals of Texas, Dallas.

Jan. 24, 2003.

Vincent R. Kirst, Law Firm of Vincent R. Kirst, Irving, for Appellant.

Kelly S. Gooch, Frederick Lewis, Craig A. Cowart, Lewis, Fisher, Henderson, Claxton & Mulroy, LLP, Memphis, TN, Amanda S. Lewis, Strasburger & Price, L.L.P., Dallas, for Appellee.

Before Chief Justices THOMAS, CORNELIUS,[1] and BOYD.[2]

## OPINION

·Opinion by Chief Justice CORNELIUS (Retired).

Charles Williams appeals the summary judgment rendered in favor of his former employer, First Horizon Home Loan Corporation f/k/a FT Mortgage Companies, and its parent company, First Tennessee National Corporation (collectively, "First Horizon"). In two issues, Williams argues that summary judgment was improper because genuine issues of material fact exist with regard to his breach of contract and intentional infliction of emotional distress claims. We affirm the judgment.

In 1998, First Horizon hired Williams to help prepare the company's computers for potential Y2K problems. Although Williams feared the company would not need his services after the Y2K problems

---

1. The Honorable William J. Cornelius, Chief Justice, retired, Sixth District Court of Appeals, Texarkana, Texas, sitting by assignment.

2. The Honorable John T. Boyd, Chief Justice, retired, Seventh District Court of Appeals, Amarillo, Texas, sitting by assignment.

had been addressed and corrected, he accepted the job. Before Williams accepted the job, First Horizon sent him a letter describing the job, the salary, the benefits package, and a special severance package "in the event of a change in control." As to the severance package, the letter stated, "You will be covered by FT's special severance in the event of a change in control. I can provide details at your request." The letter also stated it was "an offer of employment and should not be construed as an employment contract." It requested Williams's signature if he agreed with the terms outlined in the letter. Williams signed the letter and started working for First Horizon. First Horizon issued Williams a company credit card, which Williams used for business and personal use, with the understanding that personal use was authorized so long as he paid the balances monthly. At one point, when Williams failed to pay the monthly balance, First Horizon Loss Prevention Officer David Scaff and Human Resources Supervisor Rhonda Lawson called Williams into a private office and, in the presence of another employee, Janice Smith, questioned him about his credit card use. Lawson then terminated Williams, and Smith escorted him to his office to retrieve his personal effects. Then, while escorting Williams out of the building, Smith stated in the presence of additional employees standing in an "open bull pen" area that Williams had been terminated and would not be eligible to be rehired.

Williams sued First Horizon for breach of contract and intentional infliction of emotional distress. The trial court granted First Horizon's motion for summary judgment, and Williams appeals.

The standard of review on appeal is whether the successful movant at the trial court level carried its burden of showing there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Gonzales v. City of El Paso*, 978 S.W.2d 619, 621 (Tex.App.-El Paso 1998, no pet.) (citing *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991)). The question on appeal is whether the summary judgment proof establishes, as a matter of law, that there is no genuine issue of material fact as to one or more of the essential elements of the movant's cause of action or claim. *Id.* In resolving the issue of whether the movant has carried this burden, we take as true all evidence favorable to the nonmovant and resolve all doubts in the nonmovant's favor. *See id.* Where the defendants are the movants and they submit summary judgment evidence disproving at least one essential element of each of the plaintiff's causes of action, summary judgment should be granted. *Id.* Furthermore, where, as here, the trial court's order granting summary judgment does not specify the ground or grounds on which it bases its ruling, summary judgment will be affirmed on appeal if any of the theories advanced in the motion for summary judgment is meritorious. *Id.*

In his first issue, Williams questions whether First Horizon proved as a matter of law that he could not establish a claim for breach of contract on either of two grounds: (1) failing to terminate in accordance with the company's own rules and procedures, and (2) failing to give Williams a severance package on his termination.

The elements of a breach of contract claim are: (1) the existence of a valid contract; (2) the plaintiff performed; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach. The question presented here is whether a valid contract existed. Texas follows the employment-at-will doctrine, and employment for an indefinite term may be terminated at will and without

cause. *Reyna v. First Nat'l Bank in Edinburg*, 55 S.W.3d 58, 71 (Tex.App.-Corpus Christi 2001, no pet.). Absent a specific contract term to the contrary, this doctrine allows an employee to quit or be terminated without liability on the part of the employer or the employee, with or without cause. A discharged employee who asserts that the parties have contractually agreed to limit the employer's right to terminate the employee at will has the burden of proving an express agreement or written representation to that effect. To rebut the presumption of employment at will, an employment contract must directly limit in a "meaningful and special way" the employer's right to terminate the employee without cause. *Id.* In an employment-at-will situation, an employee policy handbook or manual does not, by itself, constitute a binding contract for the benefits and policies stated unless the manual uses language clearly indicating an intent to do so. *Gamble v. Gregg County*, 932 S.W.2d 253, 255 (Tex.App.-Texarkana 1996, no writ); *see Vida v. El Paso Employees' Fed. Credit Union*, 885 S.W.2d 177, 181 (Tex.App.-El Paso 1994, no writ). In those cases holding that personnel manuals may create contractual rights, there is either language in the manuals expressing contractual intent, or the manuals were complemented by oral agreements making the policy provisions binding. *See Gamble*, 932 S.W.2d at 255.

■ Here, Williams signed the personnel manual, acknowledging that he read and understood it. The manual's preface stated it did not constitute an employment contract. A disclaimer in an employee handbook, such as the one included in the preface, negates any implication that a personnel procedures manual places a restriction on the employment-at-will relationship. *See Fed. Exp. Corp. v. Dutschmann*, 846 S.W.2d 282, 283 (Tex.1993).

■ Even if the disclaimer had not existed, the manual's provision regarding termination did not limit in a "meaningful and special way" First Horizon's right to terminate an employee without cause. That provision stated that termination was appropriate where the employee's conduct was of such a serious nature as to warrant immediate dismissal. In such event, the employee's supervisor should recommend termination to the next level of management for approval and confer with the local personnel representative before advising the employee of the decision. This provision merely explained the termination procedure that the supervisor should employ. It did not limit the company's right to terminate an at-will employee. *See Haynes v. City of Beaumont*, 35 S.W.3d 166, 179 (Tex.App.-Texarkana 2000, no pet.) (handbook's detailed disciplinary regimen for employee termination did not expressly, clearly, and specifically modify at-will employment status). The manual in this case did not create a contract.

■ Furthermore, even if the parties had entered into a contract, First Horizon committed no breach by failing to give Williams severance pay. Williams accepted and signed a letter that stated the severance package was available to him "in the event of a change in control," and there is no evidence First Horizon experienced a change in control (CIC) as defined under the severance plan. First Horizon's CIC plan included examples such as where another person or company acquires at least twenty percent of FTNC stock, a change in the majority of FTNC's Board of Directors without the approval of the incumbent Board, or a merger where FTNC does not remain in control. "The CIC Plan goes into effect *only* if there is a CIC ... *and* within 36 months after CIC, employment is terminated by FTNC." Because Williams's termination did not fall

within the terms of the CIC plan, he was not entitled to severance pay.

First Horizon's severance package is set out in detail in the company's personnel manual. In Williams's affidavit and deposition testimony supporting his response to First Horizon's motion for summary judgment, he said he sought additional information regarding the circumstances under which he would be entitled to severance pay and was referred to Stan Cain, a senior vice president of the company. He said Cain told him he would be entitled to severance benefits in the event he was terminated from his position. He said he asked Cain if "this covers termination," and Cain said "yes." When asked what Williams meant when he said "this," Williams said, "Does the special severance offer cover termination in addition to change in control?" At another point in his deposition, however, Williams testified that he understood the severance package to mean that it applied only in the event of the separation from the company through the purchase of the company, and that there was nothing in the employment letter that led him to believe that if he were terminated by the company as opposed to someone purchasing the company, he would be covered by the severance package. He said he got his belief that he would get severance pay whether there was a purchase of the company or not when he asked Cain specifically, "... does this cover termination?" and Cain's response was "yes."

We do not believe this testimony is sufficient to raise a fact issue as to whether First Horizon orally agreed to let Williams participate in the severance package even if there was no take-over of the company. There is no testimony that Cain or anyone else promised Williams that he would be covered by the severance package even if there was no take-over. There is only

Williams's assertion that he "understood" that was the case. The only severance package that Cain and Williams talked about was the one outlined in the employment letter and the personnel manual, and that was the one applicable only in the event of a change in control of the company. Thus, there is no evidence that Williams and Cain had a meeting of the minds on an extra-documentary oral agreement that Williams would be covered by the severance package in any event. If there is evidence of such a meeting of the minds, it is no more than a scintilla, and it is not sufficient to defeat summary judgment on this issue. There must be some evidence of a specific, express, and clear agreement contradicting the express provisions of the personnel manual and the employment offer letter. *See Haynes v. City of Beaumont*, 35 S.W.3d at 179; *Gamble v. Gregg County*, 932 S.W.2d at 255; *United Transp. Union v. Brown*, 694 S.W.2d 630, 633 (Tex.App.-Texarkana 1985, writ ref'd n.r.e.).

In his second issue, Williams questions whether First Horizon proved as a matter of law that the manner in which the company terminated him did not constitute intentional infliction of emotional distress. Specifically, he questions whether First Horizon disproved extreme and outrageous conduct and severe emotional distress as a matter of law.

 Extreme and outrageous conduct and severe emotional distress are two of the four necessary elements of an intentional infliction of emotional distress claim. *See Blanche v. First Nationwide Mortg. Corp.*, 74 S.W.3d 444, 454 (Tex.App.-Dallas 2002, no pet.). To be extreme and outrageous, a defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

society." *Tex. Farm Bureau Mut. Ins. Cos. v. Sears,* 84 S.W.3d 604, 610 (Tex. 2002). Merely insensitive or rude behavior is not extreme and outrageous. *Id.* Likewise, "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities do not rise to the level of extreme and outrageous conduct." *Id.* Initially, the court must decide whether the conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. Only when reasonable minds may differ is it for the jury to determine whether in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability. *Id.*

In deciding whether particular conduct rises to an extreme and outrageous level, we consider the conduct's context and the parties' relationship. *Id.* In the workplace, even though the employer's conduct might be unpleasant for the employee, the employer has the discretion to supervise, review, criticize, demote, transfer, and discipline its workers. *Id.* Ordinary employment disputes do not constitute extreme and outrageous conduct. Only in the most unusual of circumstances does an employer's conduct rise to that level. *See Southwestern Bell Mobile Sys., Inc. v. Franco,* 971 S.W.2d 52, 54 (Tex. 1998) (holding that wrongful termination is not extreme and outrageous conduct); *Randall's Food Markets, Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995) (holding that investigation of employee's alleged theft was not extreme and outrageous); *Wornick Co. v. Casas,* 856 S.W.2d 732, 735 (Tex.1993) (holding that ordering employee to immediately leave premises and having employee escorted away did not rise to level of extreme and outrageous conduct).

Here, Scaff questioned Williams in front of two employees about his personal use of the company credit card. First Horizon allowed him to retrieve his personal belongings, and, while being escorted out of the building, Smith told Williams in front of other employees in a "bull pen area" that he was being terminated and would not be eligible to be rehired. Williams failed to carry his burden of proving that, in this context, the conduct brought the dispute outside the scope of an ordinary employment dispute and into the realm of extreme and outrageous conduct. *See GTE Southwest, Inc. v. Bruce,* 998 S.W.2d 605, 613 (Tex.1999).

Moreover, with regard to the severity of Williams's distress, the record shows he had general feelings of anxiety in accepting a job he feared would end after he completed the Y2K project. When he was being terminated, he "sat there in a daze and in shock for awhile." Being escorted out of the building was "kind of all a blur" to him because he was "emotionally reeling from being fired." During the month following his termination, Williams lost his appetite and his family thought he was cranky and despondent. Nevertheless, within a few weeks, he was able to "bounce back," he considered himself to be in good mental health, he never had to take any sick time from other work because of his experience at First Horizon, and he never sought psychiatric or medical help because of his termination. "Severe emotional distress" means distress so severe that no reasonable person could be expected to endure it without undergoing unreasonable suffering. *Blanche,* 74 S.W.3d at 454. The plaintiff must show more than mere worry, anxiety, vexation, embarrassment, or anger. *Id.* The facts here do not demonstrate "severe" emotional distress because they do not rise to the level of emotional distress such that no reasonable person could be expected to endure it without undergoing unreasonable suffering. *See Regan v. Lee,* 879 S.W.2d 133, 136–37 (Tex.App.-Houston [14th Dist.]

1994, no writ). Because there is no genuine issue of material fact with regard to either element, the trial court properly granted summary judgment for First Horizon on this cause of action.

We affirm the trial court's judgment.