Affirmed and Memorandum Opinion filed August 24, 2006








Affirmed and Memorandum Opinion filed August 24, 2006.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00353-CV

____________

 

LAURA M. PINSON, Appellant

 

V.

 

FIRST FINANCIAL CAPITAL CORP., Appellee

 



 

On Appeal from the 280th
District Court

Harris County, Texas

Trial Court Cause No. 04-21305

 



 

M E M O R A N D U M   O P I N I O N

Appellant Laura M. Pinson appeals the trial court=s summary judgment
in favor of her former employer, First Financial Capital Corp. on her claim for
intentional infliction of emotional distress. We affirm. 

I.  Factual and Procedural
Background








Appellant Laura M. Pinson brought suit against her former
employer, appellee First Financial Capital Corp. (hereinafter AFirst Financial@), asserting
intentional infliction of emotional distress.  Pinson alleged that, during her
employment as a billing administrative processor with First Financial, she was
subjected to abusive working conditions which allegedly caused her severe
emotional distress and placed her in fear for her personal safety. 

After taking Pinson=s deposition,
First Financial filed a traditional motion for summary judgment, which the
trial court granted.  Challenging that ruling, Pinson asserts that First
Financial=s motion for summary judgment was premature and that,
in any event, a genuine issue of material fact exists as to one or more
elements of her intentional-infliction-of-emotional-distress claim. 

II. Standard of Review

In
reviewing a traditional motion for summary judgment, we consider whether the
successful movant at the trial level carried its burden of showing that there
is no genuine issue of material fact and that judgment should be granted as a
matter of law.  KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.,
988 S.W.2d 746, 748 (Tex.1999).  A defendant must conclusively negate at least
one essential element of each of the plaintiff=s causes of action or conclusively
establish each element of an affirmative defense.  Sci. Spectrum, Inc. v.
Martinez, 941 S.W.2d 910, 911 (Tex.1997).  Under this traditional standard,
we take as true all evidence favorable to the nonmovant, and we make all
reasonable inferences in the nonmovant=s favor.  Dolcefino v. Randolph,
19 S.W.3d 906, 916 (Tex. App.CHouston [14th Dist.] 2000, pet. denied).  If the movant=s motion and summary-judgment
evidence facially establish its right to judgment as a matter of law, the
burden shifts to the nonmovant to raise a genuine, material fact issue
sufficient to defeat summary judgment.  Id.  When, as in this case, the
order granting summary judgment does not specify the grounds upon which the
trial court relied, we must affirm summary judgment if any of the independent
summary-judgment grounds is meritorious.  FM Props.  Operating Co. v. City
of Austin, 22 S.W.3d 868, 872 (Tex.  2000).








III. Analysis

A.      Was First
Financial=s traditional motion for summary
judgment prematurely filed? 

We turn first to Pinson=s claim in her
third issue that First Financial=s motion for
summary judgment was premature and should not have been granted because the
discovery period in the docket control order had not elapsed.  In support of
this argument, Pinson relies on Texas Rule of Civil Procedure 166a(i) governing
no-evidence motions for summary judgment.  Some of the time restrictions for
filing a no-evidence motion for summary judgment are not applicable to a 
traditional summary-judgment motion.  See Tex. R. Civ. P. 166a (c), (i).  As the rules of procedure
state, a no-evidence motion for summary judgment is proper only after Aan adequate time
for discovery@ has passed.  See id. at 166a(i).  However, a
traditional motion for summary judgment may be filed at any time  as long as
the motion and any supporting affidavits are filed and served at least
twenty-one days before the hearing date.  See id. at 166a(c).  First
Financial=s traditional motion for summary judgment was not
prematurely filed.  Accordingly, we overrule Pinson=s third issue. 

B.      Did the
trial court err in granting First Financial=s motion for
summary judgment? 








Turning now to the merits of Pinson=s argument that a
genuine issue of material fact exists on one or more of the essential elements
of her claim for intentional infliction of emotional distress, we consider
whether First Financial
negated at least one element of this claim.  To recover for the intentional infliction
of emotional distress, a plaintiff is required to establish that (1) the
defendant acted intentionally or recklessly, (2) the conduct was extreme and
outrageous, (3) the conduct caused the plaintiff emotional distress, and (4)
the emotional distress was severe.  See Standard Fruit & Vegetable Co.
v. Johnson, 985 S.W.2d 62, 65 (Tex. 1998).  In addition, A[a] claim for
intentional infliction of emotional distress cannot be maintained when the risk
that emotional distress will result is merely incidental to the commission of
some other tort.@ Id. at 68.  Accordingly, a claim for
intentional infliction of emotional distress will not lie if emotional distress
is not the intended or primary consequence of the defendant=s conduct.  Id.;see
also Durkel v. St. Joseph Hosp., 78 S.W.3d 576, 586 (Tex. App.CHouston [14th
Dist.] 2002, no pet).  In its motion for summary judgment, First Financial
attacked elements two and fourCthat the actions forming the basis of
Pinson=s claim do not
rise to the level necessary to constitute extreme and outrageous conduct, and
that such actions did not cause Asevere@ emotional
distress.  

To support its motion, First Financial relied upon Pinson=s deposition
testimony.   In response, Pinson attached her own affidavit in an attempt to
raise a genuine issue of material fact on the two challenged elements.  Because
the trial court did not
specify the grounds upon which it relied in granting the motion for summary
judgment, we may affirm the summary judgment if we conclude that First
Financial satisfied its burden in negating either element two or four.  See
FM Props.  Operating Co., 22 S.W.3d at 872.  

AExtreme and
Outrageous@ Conduct

In her original petition, Pinson alleged that First
Financial subjected her to certain abusive working conditions during her
employment.  Those alleged abusive conditions (as described in Pinson=s deposition and
in her affidavit) are summarized as follows: 

!       Pinson and another co-worker were told in a
raised voice, Ayou guys...shut up@  on one occasion by their
supervisor, and a few co-workers near Pinson=s cubicle heard it.

!       Pinson=s supervisor; responding to a perceived error by Pinson in
entering client data into the company=s computer system, told Pinson in a raised voice that she
was an Aembarrassment.@  The door to her supervisor=s office was apparently open so
everyone could hear what was said.

!       Pinson heard that, a week after her
employment terminated, her supervisor told another employee (now ex-employee)
that Pinson had been given the choice to either take another position at a
lower rate of pay or leave the company, that Pinson had been fired, and that
Pinson=s supervisor asked another employee
for her opinions in regard to Pinson=s job performance.








!       Pinson was allegedly called a Aliar@ by her supervisor, in an incident also related to
Pinson=s alleged mis-entry of some client
billing data into the company=s computer system.

!       Pinson=s supervisor allegedly told her that she wanted to get out
of her neighborhood (where Pinson also lived and grew up) because Atoo many blacks and Mexicans were
starting to take over.@

!       Pinson allegedly was told in a meeting with
her supervisor and another high-level employee that she could either take
another position at a lower rate of pay or not have a job, which violated the
company policy.

!       Pinson allegedly was told that she would be
terminated if she did not take the Ademotion@ and that she was going to be replaced by an African-American woman,
who was allegedly on probation at the time.  Pinson alleges that the
African-American woman was receiving better treatment because of her race. 








These alleged instances fall within the realm of
insensitive or rude behavior; they do not rise to the level of Aextreme and
outrageous@ conduct, as defined by the Texas Supreme Court.  To
be Aextreme and
outrageous,@ conduct must be Aso outrageous in
character, and so extreme in degree, as to go beyond all possible bounds of
decency, and to be regarded as atrocious, and utterly intolerable in a
civilized community.@  Natividad v. Alexsis, Inc., 875
S.W.2d 695, 699 (Tex.1994).  Texas courts have adopted a strict approach to
intentional-infliction-of-emotional-distress claims arising in the workplace. See
Miller v. Galveston/Houston Diocese, 911 S.W.2d 897, 900‑01 (Tex.
App.CAmarillo 1995, no
writ); Amador v. Tan, 855 S.W.2d 131, 135 (Tex. App.CEl Paso 1993, writ
denied); Horton v. Montgomery Ward & Co., 827 S.W.2d 361, 369 (Tex.
App.CSan Antonio 1992,
writ denied) (holding that Aincidents in which a Texas court has
determined the conduct to be extreme and outrageous in the employer/employee
setting are few@).  Underlying these decisions is the
sensible notion that, to properly manage its business, an employer must be able
to supervise, review, criticize, demote, transfer, and discipline employees.  See,
e.g., GTE Southwest, Inc. v. Bruce, 998 S.W.2d 605, 612B13 (Tex.1999)
(concluding that an employer must have latitude to exercise its rights to
supervise and criticize, in a permissible way, even though emotional distress
may result);  Diamond Shamrock Ref. & Mktg. Co. v. Mendez, 809
S.W.2d 514, 522 (Tex. App.CSan Antonio 1991) (holding that an
employer=s public
characterization of the plaintiff as a Athief@ to plaintiff=s co-workers and
members of the community, also was not Aextreme and
outrageous@), aff'd in part and rev'd in part on other grounds,
844 S.W.2d 198 (Tex. 1992). Given these considerations, Texas courts have held
that a claim for intentional infliction of emotional distress does not lie for
ordinary employment disputes.  Miller, 911 S.W.2d at 900‑01.  The
range of behavior encompassed in Aemployment
disputes@ is broad and
includes, at a minimum, such things as criticism, lack of recognition, and low
evaluations, which, although unpleasant and sometimes unfair, are ordinarily
expected in the work environment.  Johnson v. Merrell Dow Pharms., 965
F.2d 31, 33‑34 (5th Cir. 1992) (applying Texas law).








Generally, insensitive or even rude behavior does not
constitute Aextreme and outrageous@ conduct.  Natividad,
875 S.W.2d at 699.[1] 
Similarly, mere insults, indignities, threats, annoyances, petty oppressions,
or other trivialities do not rise to the level of Aextreme and
outrageous@ conduct.  See  Saucedo v. Rheem Mfg. Co., 974
S.W.2d 117, 124 (Tex. App.CSan Antonio 1998, pet. denied) (holding
that supervisor swearing at employee, calling him obscene names, insulting and
threatening to fire employee, and blaming employee for supervisor=s mistakes did not
rise to the level of Aextreme and outrageous@); Porterfield
v. Galen Hosp. Corp., 948 S.W.2d 916, 920 (Tex. App.CSan Antonio 1997,
writ denied) (holding verbal abuse, refusal to allow plaintiff lunch breaks,
and hostile demonstrations when plaintiff left work sick was not Aextreme and
outrageous@ conduct).  Thus, to establish a claim for
intentional infliction of emotional distress in the workplace, an employee must
prove the existence of some conduct that brings the dispute outside the scope
of an ordinary employment dispute and into the realm of Aextreme and
outrageous@ behavior.  See Ramirez v. Allright Parking El
Paso, Inc., 970 F.2d 1372, 1376 (5th Cir. 1992) (requiring employee to show
conduct Aelevating [the
employer=s] actions above
those involved in an >ordinary employment dispute= @).  Accordingly,
in order to prove her claim, Pinson had to raise a genuine issue of material
fact as to the existence of some conduct by First Financial that would bring an
ordinary employment dispute into the realm of Aextreme and
outrageous@ behavior. She failed to do so.  

None of the statements allegedly made by Pinson=s supervisor rise
to a level beyond that of an ordinary workplace dispute.  None of the matters
recited in Pinson=s affidavit create a genuine issue of
material fact on the issue of whether First Financial=s alleged conduct
constitutes Aextreme and outrageous@ behavior.  Pinson
failed to present any other evidence raising a genuine issue of material fact
as to whether the alleged conduct was Aextreme and
outrageous.@  Thus,  we conclude that First Financial negated element two of
Pinson=s claim for intentional infliction of
emotional distress.

Based on
this determination, we need not decide whether a genuine issue of material fact
exists on element four of Pinson=s claimCwhether the alleged conduct caused Asevere@ emotional distress.  Nevertheless,
evaluation of this ground for summary judgment yields the same result.  

ASevere@ Emotional
Distress








ASevere emotional distress@  means distress so severe that no
reasonable person could be expected to endure it without undergoing unreasonable
suffering.  See Williams v. First Tenn. Nat=l. Corp., 97 S.W.3d 798, 804B05 (Tex. App.CDallas 2003, no pet.).  There is no
evidence that Pinson=s emotional stress was Asevere.@  Indeed, her own testimony (in both
her deposition and her affidavit) conclusively establishes that her emotional
distress was not severe.  She has never been diagnosed with depression or any
other psychiatric problem.  She never experienced nightmares, and she
acknowledged that part of reason she began to see a psychiatrist (even before
the first alleged incident) was related to the Anormal@ stress of work.  Pinson was required
to show more than mere worry, anxiety, vexation, embarrassment, or anger.  Id. 
The summary-judgment evidence does not demonstrate Asevere@ emotional distress because there is
no evidence of emotional distress rising to a level that no reasonable person
could be expected to endure it without undergoing unreasonable suffering.  See
Regan v. Lee, 879 S.W.2d 133, 136‑37 (Tex. App.CHouston [14th Dist.] 1994, no writ).  First Financial,
therefore, also negated the fourth element of Pinson=s claim.

IV.  Conclusion

Because we conclude that First Financial negated both the
second and fourth elements of Pinson=s claim for
intentional infliction of emotional distress, summary judgment on this claim
was proper on either basis.  See Sci.  Spectrum, 941 S.W.2d at 911. 
Accordingly, we affirm the trial court=s judgment. 

 

 

 

/s/      Kem Thompson Frost

Justice

 

 

 

Judgment rendered
and Memorandum Opinion filed August 24, 2006.

Panel consists of
Justices Anderson, Edelman, and Frost.









[1]  See also
Beiser v. Tomball Hosp. Auth., 902 S.W.2d 721, 722 (Tex. App.CHouston [1st Dist.] 1995, writ
denied) (stating termination in violation of a whistleblower statute was not in
itself Aextreme and outrageous@ conduct); Garcia v. Andrews,
867 S.W.2d 409 (Tex. App.CCorpus Christi 1993, no writ)
(holding conduct of manager who made sexually suggestive and embarrassing
remarks to plaintiff and Amentally undressed her@, was not Aextreme and outrageous@); Horton, 827 S.W.2d at 361
(holding conduct of co‑worker who cursed at plaintiff, committed assault
and battery, hit her with a wad of paper, placed rattlesnake rattlers in her
desk, and defaced her pictures was not Aextreme and outrageous@).