

# IN THE
# TENTH COURT OF APPEALS

### No. 10-21-00107-CV

**STEVEN EATON,**

**Appellant**

**v.**

**MAZANEC CONSTRUCTION CO., INC.,**

**Appellee**

**From the 74th District Court
McLennan County, Texas
Trial Court No. 2019-2092-3**

**&**



# IN THE
# TENTH COURT OF APPEALS

### No. 10-21-00111-CV

## IN RE STEVEN EATON

**Original Proceeding**

## MEMORANDUM OPINION

In seven issues on direct appeal in appellate cause number 10-21-00107-CV, and in two issues presented in a petition for writ of mandamus in appellate cause number 10-21-00111-CV, appellant and relator, Steven Eaton, complains about various actions taken by the trial court in favor of appellee and real party in interest, Mazanec Construction Company, Inc. ("Mazanec"). Because we conclude that material fact issues exist as to Mazanec's breach-of-contract and promissory-estoppel claims, we reverse the trial court's judgment in appellate cause number 10-21-00107-CV and remand for proceedings consistent with this opinion. And based on our resolution of Eaton's direct appeal in appellate cause number 10-21-00107-CV, we dismiss Eaton's petition for writ of mandamus in appellate cause number 10-21-00111-CV as moot.

### Background

This case arises from a dispute involving a construction bid to perform plumbing services on the McLennan Community College Business Technology Renovation Project (the "MCC Project"). The general contractor, Mazanec, alleged that a subcontractor, Eaton, refused to perform work that he had agreed to perform under a signed plumbing bid submitted and purportedly accepted by Mazanec. Mazanec sued Eaton for breach of contract and promissory estoppel. More than sixty days after Mazanec filed its original petition, Eaton filed a motion to dismiss under the Texas Citizens' Participation Act

("TCPA"). The trial court conducted a hearing on Eaton's TCPA motion to dismiss. At that hearing, the trial judge, the Honorable Vicki Menard, disclosed that she has social relationship with the Mazanec family and questioned counsel for both parties as to whether they would proceed with her as judge. Counsel for Eaton consented to Judge Menard presiding over the case.

Thereafter, Judge Menard denied Eaton's TCPA motion to dismiss as untimely. Eaton did not appeal Judge Menard's ruling on his TCPA motion to dismiss. Approximately four months after Judge Menard disclosed her social relationship with the Mazanec family and approximately two months after the denial of the TCPA motion to dismiss, Eaton filed a written motion to recuse Judge Menard on April 2, 2020. Judge Menard signed an order of recusal on June 25, 2020.[1] As a result of Judge Menard's recusal, this case was assigned to the Honorable Gary Coley, Judge of the 74th District Court.

While Judge Menard considered Eaton's motion to recuse, Mazanec filed a traditional motion for summary judgment, arguing that it was entitled to judgment as a matter of law on its breach-of-contract and promissory-estoppel claims. Eaton filed a

---

[1] In a letter to the parties explaining her decision to recuse, Judge Menard noted the following:

> I have serious questions regarding how [defense counsel] has handled this matter since I gave him every opportunity to object to my hearing the case prior to the hearing. I do not want anyone to assume a recusal motion can be used as a way to avoid an adverse ruling. However, I will voluntarily recuse myself from the case since [defense counsel] never disclosed the conflict to his client prior to waiving the conflict both on and off the record.

response and objections to Mazanec's summary-judgment motion, and Mazanec filed a reply to Eaton's response. After a hearing, Judge Coley signed an order granting Mazanec's traditional motion for summary judgment without specifying the grounds upon which judgment was rendered. In his October 5, 2020 order granting summary judgment in favor of Mazanec, Judge Coley struck through and initialed language awarding attorney's fees to Mazanec.[2]

Thereafter, the parties submitted briefing on the issue of attorney's fees, and the trial court conducted a hearing on the issue. On February 22, 2021, the trial court signed a final judgment awarding Mazanec $14,600 for monetary damages incurred by Mazanec and caused by Eaton, $29,100 for reasonable and necessary attorney's fees incurred through judgment in this case and reasonable and necessary attorney's fees for appeals to both this Court and the Texas Supreme Court, and pre- and post-judgment interest.

Eaton filed a motion for new trial, which the trial court denied. Eaton's direct appeal and petition for writ of mandamus followed.

**Eaton's Direct Appeal**

In seven issues on direct appeal in appellate cause number 10-21-00107-CV, Eaton complains about the trial court's actions handling a motion to recuse, the trial court's denial of his motion to dismiss filed under the TCPA, the trial court's granting of

---

[2] The record contains multiple supplements to Mazanec's summary-judgment motion addressing the issue of attorney's fees.

summary judgment in favor of Mazanec, the trial court's award of attorney's fees, and the trial court's denial of his motion for new trial.

THE MOTION TO RECUSE

In his first two issues in his direct appeal, Eaton contends that Judge Menard did not timely and fully disclose on the record grounds for her recusal and that she did not timely recuse herself. Eaton further alleges that Judge Menard's delay in ruling on his motion to recuse was prejudicial to him given that the trial judge denied his TCPA motion to dismiss and forced him to incur additional attorney's fees before deciding to recuse.

At the outset, we note that Judge Menard granted Eaton's motion to recuse. Pursuant to Texas Rule of Civil Procedure 18a(j)(1)(B), "[a]n order granting a motion to recuse is final and cannot be reviewed by appeal, mandamus, or otherwise." TEX. R. CIV. P. 18(j)(1)(B).

Furthermore, with respect to Eaton's arguments about the purported delay in taking action on the motion to recuse, we note that Eaton did not file a petition for writ of mandamus complaining about the delay, and more importantly, Eaton's actions in the trial court resulted in a waiver of this complaint. Specifically, it was at the December 11, 2019 hearing on Eaton's TCPA motion to dismiss that Judge Menard informed the parties of her social relationship with the Mazanec family and asked if there was any objection to her hearing the case. *See* TEX. R. CIV. P. 18a(b)(1)(A) ("A motion to recuse . . . must be filed as soon as practicable after the movant knows of the ground stated in the

motion . . . ."). Counsel for Eaton expressed on the record that he had no objection to Judge Menard hearing the case. *See id.* at R. 18b(e) ("The parties to a proceeding may waive any ground for recusal after it is fully disclosed on the record."); *see also Blackwell v. Humble*, 241 S.W.3d 707, 712 (Tex. App.—Austin 2007, no pet.). It was not until more than two months after the trial court denied his TCPA motion to dismiss and almost four months after Judge Menard informed the parties of her social relationship with the Mazanec family that Eaton filed his motion to recuse on April 2, 2020, alleging that he had grave concerns that he would not receive a fair trial from Judge Menard based on her social relationship with the Mazanec family. Eaton waited too long to file his motion to recuse and, thus, waived his contention in this issue. *See* TEX. R. CIV. P. 18a(b)(1)(A); *see also McElwee v. McElwee*, 911 S.W.2d 182, 186 (Tex. App.—Houston [1st Dist.] 1995, writ denied) ("If a party fails to comply [with rule 18a], he waives his right to complain of a judge's failure to recuse himself."). Accordingly, we overrule Eaton's first two issues in his direct appeal.

THE TCPA MOTION TO DISMISS

In his third issue on direct appeal, Eaton asserts that the trial court abused her discretion by denying his TCPA motion to dismiss. We disagree.

The TCPA is an anti-SLAPP ("Strategic Lawsuits Against Public Participation") statute that protects citizens from retaliatory lawsuits that seek to intimidate or silence them on matters of public concern. *See In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015). The

purpose of the TCPA is to identify and summarily dispose of lawsuits designed only to chill First Amendment rights, not to dismiss meritorious lawsuits. *Id.* at 589. It accomplishes this purpose by establishing a burden-shifting scheme that, if satisfied, results in a relatively expedited dismissal of lawsuits that are meritless within the meaning of the TCPA. *Id.* at 586 (noting the TCPA provides a special procedure for the expedited dismissal of meritless lawsuits).

A party triggers the TCPA's dismissal procedure by filing a motion to dismiss. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a). A motion to dismiss must be filed not later than the 60th day after the date of service of the legal action. *Id.* § 27.003(b). The trial court may extend the time to file a motion on a showing of good cause. *Id.*

A trial court does not err when it denies an untimely TCPA motion to dismiss. *See Paulsen v. Yarrell*, 455 S.W.3d 192, 198 (Tex. App.—Houston [1st Dist.] 2014, no pet.), *superseded by statute on other grounds as stated in Schlumberger Ltd. v. Rutherford*, 472 S.W.3d 881, 887-88 (Tex. App.—Houston [1st Dist.] 2015, no pet.); *In re Estate of Check*, 438 S.W.3d 829, 837 (Tex. App.—San Antonio 2014, no pet.), *overruled in part by Montelongo v. Abrea*, 622 S.W.3d 290, 299 (Tex. 2021); *see also Mancilla v. TaxFree Shopping, Ltd.*, No. 05-18-00136-CV, 2018 Tex. App. LEXIS 9371, at *5 (Tex. App.—Dallas Nov. 16, 2018, no pet.) (mem. op.) ("If the motion is not filed within the statutory deadline, the movant forfeits the early-dismissal protections of the [TCPA]."); *Hayes v. Cavin*, No. 03-17-00501-CV, 2018 Tex. App. LEXIS 8343, at *9 (Tex. App.—Austin Oct. 12, 2018, pet. denied) (mem. op.)

(affirming an order denying a TCPA motion to dismiss because the trial court "could have reasonably concluded that Hayes's motion was untimely").

Here, the record shows that Mazanec filed its original petition on June 17, 2019, asserting claims for breach of contract and promissory estoppel. Eaton filed his TCPA motion to dismiss on October 18, 2019. Because Eaton did not file his TCPA motion to dismiss within sixty days of Mazanec's June 17, 2019 original petition, we hold that Eaton's TCPA motion to dismiss was untimely and that the trial court did not err by denying it as untimely. We overrule Eaton's third issue on direct appeal.

SUMMARY JUDGMENT

In his fourth issue on direct appeal, Eaton contends that the trial court erred by granting Mazanec's traditional motion for summary judgment. Specifically, Eaton argues that there was a material fact issue as to the scope of the work and whether his offer transformed into a definite, unconditional promise.

**Standard of Review**

We review a trial court's summary judgment de novo. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In reviewing a traditional motion for summary judgment, we must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam). The movant carries the burden of establishing that no material fact issue exists and that it is entitled to judgment

as a matter of law. TEX. R. CIV. P. 166a(c); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam). The nonmovant has no burden to respond to a summary-judgment motion unless the movant conclusively establishes its cause of action or defense. *Willrich*, 28 S.W.3d at 23. However, once the movant produces sufficient evidence conclusively establishing its right to summary judgment, the burden shifts to the nonmovant to present evidence sufficient to raise a fact issue. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). In reviewing a traditional motion for summary judgment, we must consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference in favor of the nonmovant and resolving any doubts against the motion. *See Mayes*, 236 S.W.3d at 756. Furthermore, "[i]f the order granting summary judgment does not specify the grounds upon which judgment was rendered, we must affirm the summary judgment if any of the grounds in the summary judgment motion is meritorious." *Lotito v. Knife River Corp.-S.*, 391 S.W.3d 226, 227 (Tex. App.—Waco 2012, no pet.) (citing *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000)).

**Summary-Judgment Evidence**

As stated earlier, Mazanec asserted breach-of-contract and promissory-estoppel claims against Eaton pertaining to a construction bid. Mazanec moved for summary judgment on both claims. In support of its summary-judgment motion, Mazanec attached, among other things, an affidavit executed by Aaron J. Mynar, Project Manager

for Mazanec; the Construction Bid Form submitted by Eaton; a notice to proceed; email correspondence from Mynar to all subcontractors on the project; and bids and a change order submitted by the subcontractor that replaced Eaton, Mike Staas Services ("Staas").

In his affidavit, Mynar explained that, on April 23, 2019, Mazanec received a bid from Eaton to perform interior plumbing work on the MCC Project. According to Mynar, Eaton's bid for $118,000 was signed and dated by Eaton and did not contain any conditional language. Mynar further noted that:

> 4. On behalf of Mazanec, I accepted and relied upon the Bid as Eaton submitted it, and at no point in time did I ever request Eaton to change or alter the scope of work or amount of the Bid that he submitted to me on April 23, 2019;
>
> 5. Because the Bid for the interior plumbing work was the lowest bid, Mazanec accordingly used and relied on Eaton's Bid in submitting Mazanec's master bid for the Project.

Additional details outlined in Mynar's affidavit included the following:

- On May 1, 2019, Mazanec received notice that it had been awarded the MCC Project and was authorized to proceed.

- On May 6, 2019, Mynar sent an email to all the subcontractors whose bids Mazanec relied upon in submitting its master bid, including Eaton, informing them that Mazanec had been awarded the MCC Project, that they were expected to perform, and that a project-specific contract was being mailed to them.

- On May 7, 2019, Eaton stopped by Mazanec's office to speak about the scope and details of the project. Mynar recalled that Eaton "reaffirmed our agreement based on his Bid, we shook hands, and Eaton expressed . . . that he was looking forward to working with Mazanec again."

- On May 8, 2019, Eaton called Mynar to "back[] out of his Bid and agreement with Mazanec, because he claimed to have to [sic] many other jobs going on and did not have enough workers to dedicate to the Project."

Mynar then spoke with Eaton at Eaton's office. According to Mynar, Eaton "confessed to me that the real reason [for backing out of the bid] was because of his concern that by working with Mazanec, he would upset another local contractor with whom he did a lot of work and that had lost its bid on the Project."

In response to Eaton's decision to back out of his bid, Mazanec enlisted Mike Staas Services, the next lowest bidder, to do the plumbing work on the project.[3] Staas's bid was for $155,600. To reduce the cost to secure a substitute plumber, the Project Architect and MCC authorized a change order that increased the amount of the prime contract by $23,000. After subtracting the difference between the bids from Staas ($155,600) and Eaton ($118,000) and subtracting the increase in the prime contract authorized by the

---

[3] In its revised bid, Staas proposed to do the following, in relevant part:

- "DEMO OUT BOTH FLOORS OF PLUMBING AS NOTED ON PRINTS"
- "SAW CUT 140' OF CONCRETE ON FIRST AND SECOND FLOOR FOR UNDERFLOOR PLUMBING"
- "INSTALL NEW UNDERGROUND CASE IRON PIPE FOR NEW PLUMBING"
- "INSTALL NEW CAST IRON VENT, HANGERS"
- "HOT AND COLD WATER TO SUPPLY NEW FIXTURES, HANGERS AND INSULATION"
- "INSTALL NEW COPPER CONDENSATE LINES, HANGERS AND INSULATION"
- "INSTALL NEW ROOF AND OVERFLOW DRAINS AND PIPE, HANGERS AND INSULATION"
- "PROVIDE AND INSTALL NEW PLUMBING FIXTURES NOTED ON FIXTURE SCHEDULE"
- "PERMITS AND INSPECTIONS"
- "EXCLUDES ANY OVERTIME"
- "EXCLUDES PATCHBACK OF CONCRETE"
- "EXCLUDES ANY GAS"
- "ALL WASTE, VENT AND STORM TO BE NO HUB CAST IRON PIPE"
- "ALL WATER AND CONDESNATE TO BE TYPE L HARD COPPER"

change order ($23,000), the total cost to Mazanec for securing a substitute plumber was $14,600.

Also included in Mazanec's summary-judgment evidence was Eaton's Construction Bid Form, which provided the following with respect to the scope of work:

> Brazos River Bottom Plumbing proposes to furnish and install all interior plumbing piping and fixtures.type [sic] L hard copper water piping with insulation and service weight cast iron below floor and above floor (no utilities)[.] We will furnish all permits required. We will furnish and install all condensate drains, roof drains, [sic] We will do all plumbing demo.required [sic]. We will saw cut and remove.

In his response to Mazanec's summary-judgment motion, Eaton emphasizes that there was no contract because Mazanec altered the scope of the work. In an affidavit attached to his response, Eaton characterized the meeting with Mynar as follows:

> 4. On May 7, 2019, I went to Aaron Mynar's office. As he greeted me with a handshake, he said: "Aren't you tired of working for Built Wright yet?" I told him: "No. And I'm happy to work with y'all too." After we talked about the project and looked at the drawings, Aaron pressed me to revise my bid to include the exterior plumbing work, which he indicated was an essential requirement. When I declined his counteroffer telling him that I had other jobs and not enough employees to do the additional work, he pressured me until I said I would think about it.
>
> 5. Soon thereafter, one of my skilled employees told me he was moving to Austin before Mazanec's project at MCC was to begin. That day I called Aaron and told him that I had to decline his counteroffer and withdraw my bid, because I was losing a key employee before the project at MCC was to begin. Instead of understanding my situation, Aaron said: "I don't give a shit about your problems! You've got to do it, or Mazanec will sue you."
>
> 6. The following day, Aaron came to my office and told me: "You're gonna be sorry for continuing to work for Built Wright." I again explained that I

could not sign a contract that required me to do the exterior plumbing work and to employ sufficient workmen to complete the project promptly.

In addition to his affidavit, Eaton also attached a copy of an unsigned subcontractor agreement between Mazanec and him to his summary-judgment response. The unsigned subcontractor agreement specifically states that Eaton was to:

> Provide the necessary material, labor and equipment for the completion of *All PLUMBING & PLUMBING DEMOLITION* scope of work for MCC-Business Technology Renovation according to Plans & Specifications provided by RBDR dated April 3, 2019, and per Addendum #1 dated April 17, 2019, and Addendum #2 dated April 19, 2019.

(Emphasis added). The unsigned subcontractor agreement also included by reference "Attachment A," which were the "Scope of Work & Contract Documents." These documents include identical language regarding the scope of work including "All PLUMBING & PLUMBING DEMOLITION" as listed above.

**Mazanec's Breach-of-Contract Claim**

To establish a claim for breach of contract, Mazanec must first establish the existence of a valid contract. *See Williams v. First Tenn. Nat'l Corp.*, 97 S.W.3d 798, 802-03 (Tex. App.—Dallas 2003, no pet.); *see also Sanders v. Household Mortg. Servs.*, No. 10-07-00233-CV, 2009 Tex. App. LEXIS 4988, at **5-6 (Tex. App.—Waco July 1, 2009, no pet.) (mem. op.). Whether an alleged agreement constitutes an enforceable contract is generally a question of law. *See Meru v. Huerta*, 136 S.W.3d 383, 390 (Tex. App.—Corpus Christi 2004, no pet.).

The elements of a valid and enforceable contract are: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding. *See Hubbard v. Shankle*, 138 S.W.3d 474, 481 (Tex. App.—Fort Worth 2004, pet. denied).

A contract must be sufficiently definite in its terms so that a court can understand what the promisor undertook. *See Meru*, 136 S.W.3d at 390. If the agreement upon which the plaintiff relies is so indefinite as to make it impossible for the court to determine the legal obligations and liabilities of the parties, it is not an enforceable contract. *Id.* Moreover, to be legally binding, the parties must have a meeting of the minds and must communicate consent to the terms of the agreement. *Id.*

The summary-judgment evidence demonstrates that Eaton offered to do the interior plumbing work for the MCC Project, in accordance with his bid. However, in his affidavit, Eaton contended that Mazanec did not accept his bid in strict compliance with the terms of the offer. Rather, Eaton asserts that Mynar "pressed" him to revise the bid to include exterior plumbing work as an essential requirement for the job. The unsigned subcontractor agreement between Mazanec and Eaton reflects that the scope of the work was to include "All PLUMBING & PLUMBING DEMOLITION," which appears to include both interior and exterior plumbing work. Considering the evidence in the light most favorable to Eaton, the nonmovant, and indulging every reasonable inference in

favor of Eaton and resolving any doubts against the motion, the alteration of the scope of the work to also include exterior plumbing work appears to indicate that there was not a meeting of the minds and that neither party consented to the terms of the agreement. *See Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 74 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) ("A purported acceptance that changes or qualifies an offer's material terms constitutes a rejection and counteroffer rather than an acceptance." (citations omitted)); *see also Solis v. Evins*, 951 S.W.2d 44, 49 (Tex. App.—Corpus Christi 1997, no writ) ("To constitute a contract[,] the minds of the parties must meet with respect to the subject matter of the agreement, and as to all of its essential terms; and all of them must assent to the same thing in the same sense at the same time."). Additional evidence in support of this conclusion is Eaton's affidavit alleging that he declined Mazanec's counteroffer to complete all the plumbing work on the project and withdrew his bid.

Based on a review of the summary-judgment evidence, and applying the applicable standard of review, we conclude that there are material fact issues regarding whether a valid contract exists between Mazanec and Eaton for the plumbing work on the project. As such, we further conclude that Mazanec did not establish entitlement to judgment as a matter of law on its breach-of-contract claim.

**Mazanec's Promissory-Estoppel Claim**

Although Mazanec was not entitled to summary judgment on its breach-of-contract claim, we must also analyze the promissory-estoppel claim, as it could serve as an independent basis for affirming the summary-judgment order.

"Although promissory estoppel is normally a defensive theory, it is an available cause of action to a promisee who relied to his detriment on an otherwise unenforceable promise." *Frost Crushed Stone Co. v. Odell Geer Constr. Co.*, 110 S.W.3d 41, 44 (Tex. App.—Waco 2002, no pet.) (citations omitted). Generally, promissory estoppel is a viable alternative to breach of contract. *Trevino & Assocs. Mech., L.P. v. Frost Nat'l Bank*, 400 S.W.3d 139, 146 (Tex. App.—Dallas 2013, no pet.). The promissory-estoppel doctrine presumes that no contract exists. *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 226 (Tex. 2002). Although promissory estoppel is not applicable to a promise covered by a valid contract between the parties, promissory estoppel will apply to a promise outside a contract. *Trevino*, 400 S.W.3d at 146.

"The requisites of promissory estoppel in Texas are: (1) a promise; (2) foreseeability of reliance thereon by the promisor; and (3) substantial reliance by the promisee to his detriment." *Id.* (citations omitted). Texas Courts have held that promissory estoppel is a viable cause of action in bid construction cases. *Id.* (citing *Sipco Servs. Marine, Inc. v. Wyatt Field Serv. Co.*, 857 S.W.2d 602, 605 (Tex. App.—Houston [1st

Dist.] 1993, no writ); *Traco, Inc. v. Arrow Glass Co., Inc.*, 814 S.W.2d 186, 189 (Tex. App.—San Antonio 1991, writ denied)).

To support a finding of promissory estoppel, a successful promissory-estoppel claim must be based on "an actual promise." *See Stable Energy, L.P. v. Kachina Oil & Gas, Inc.*, 52 S.W.3d 327, 336 (Tex. App.—Austin 2001, no pet.). The asserted "promise" must be sufficiently specific and definite so that it would be reasonable and justified for the promisee to rely on it as a commitment to future action. *Comiskey v. FH Partners, LLC*, 373 S.W.3d 620, 625 (Tex. App.—Houston [1st Dist.] 2015, no pet.).

Applying the appropriate standard of review, we conclude that there are material fact issues regarding the existence of a "promise." Mazanec's argument in support of its promissory-estoppel claim is premised on Eaton's bid. As stated above, after considering the evidence in the light most favorable to Eaton, indulging every reasonable inference in favor of Eaton, and resolving any doubts against the motion, Eaton's summary judgment evidence demonstrates that Mazanec may have altered the scope of the work to include not only interior plumbing work, but also exterior plumbing work. If Eaton's evidence is to be believed, then the alteration to the scope of the work amounts to a rejection of Eaton's bid and a counteroffer, which Eaton did not accept. *See Parker Drilling Co.*, 316 S.W.3d at 74. Moreover, the purported "promise" in this case, as characterized by Mazanec, is reflected in the unsigned subcontractor agreement, which provided that

Eaton was to complete "All PLUMBING & PLUMBING DEMOLITON." This language appears to include both interior and exterior plumbing work.

Because the only "promise" in this case appears to have been rejected by Mazanec when it allegedly made its counteroffer, and because Eaton rejected the counteroffer and withdrew his original bid, we cannot say that Mazanec established its promissory-estoppel claim as a matter of law. Therefore, because material fact issues exist regarding Mazanec's breach-of-contract and promissory-estoppel claims, we conclude that the trial court erred by granting Mazanec's traditional motion for summary judgment. We sustain Eaton's fourth issue on direct appeal.

VOID ORDER

In his fifth issue on direct appeal, Eaton argues that the trial court erred by issuing a void order. Eaton does not include any argument or authority in support of this issue. Rather, he lists this as his fifth issue and mentions that the issue is addressed separately in his mandamus petition. Eaton's failure to cite legal authority or provide substantive analysis of a legal issue in this direct appeal results in waiver of the complaint. *See* TEX. R. APP. P. 38.1(i); *see also Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994) (observing that error may be waived by inadequate briefing). We overrule Eaton's fifth issue on direct appeal.

ISSUES REGARDING ATTORNEY'S FEES

In his sixth issue on direct appeal, Eaton complains that the trial court awarded unreasonable attorney's fees to Mazanec based on unnecessary and frivolous litigation. Eaton's complaint in this issue focuses on Mazanec's filing of a motion to enforce and compel discovery and Mazanec's opposition to his motion to recuse Judge Menard.

In his seventh issue, Eaton argues that the trial court erred by denying his motion for new trial. In his motion for new trial, Eaton raised several issues, including the two he focuses on in this issue: (1) that the amount of attorney's fees was unreasonable; and (2) the trial court lacked jurisdiction to award attorney's fees because the trial court's plenary power had expired by the time the final judgment was signed.

Both issues challenge the trial court's award of attorney's fees. The trial court's award of attorney's fees is premised on the granting of summary judgment in favor Mazanec based on their breach-of-contract and/or promissory-estoppel claims. Indeed, on appeal, Mazanec argues entitlement to reasonable and necessary attorney's fees under section 38.001 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (providing that a party may recover reasonable attorney's fees if the claim is for an oral or written contract); *see also Smith v. W. Y. Tam Trust*, 296 S.W.3d 545, 547 (Tex. 2009) ("If attorney's fees are proper under section 38.001(8), the trial court has no discretion to deny them." (citing *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998))). Because we have concluded that the trial court erred by granting summary judgment in

favor of Mazanec, and because the summary judgment order is the basis for the attorney's fees award, a justiciable controversy no longer exists. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding) ("A case becomes moot if a controversy ceases to exist between the parties at any stage of the legal proceedings."); *State Bar of Tex. v. Gomez*, 891 S.W.2d 243, 245 (Tex. 1994) (orig. proceeding) (stating that for a controversy to be justiciable, there must be a real controversy between the parties that will be actually resolved by the judicial relief sought). Thus, we need not address Eaton's six and seventh issues. *See* TEX. R. APP. P. 47.1, 47.4.

### Eaton's Petition for Writ of Mandamus

In two issues in his petition for writ of mandamus in appellate cause number 10-21-00111-CV, Eaton contends that: (1) the trial court abused its discretion by issuing a void order on February 22, 2021, which awarded Mazanec attorney's fees, after the trial court's plenary power expired; and (2) the trial court erred by refusing to vacate the void order after Eaton requested such relief in his motion for new trial. Because our resolution of Eaton's direct appeal results in reversal of the trial court's February 22, 2021 final judgment, which substantially corresponds with the relief requested by Eaton in this proceeding, a justiciable controversy no longer exists. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 737; *Gomez*, 891 S.W.2d at 245; *see also Dow Chem. Co. v. Garcia*, 909 S.W.2d 503, 505 (Tex. 1995) (noting that the court will not issue mandamus relief if it would be

useless or unavailing).  Accordingly, we dismiss Eaton's petition for writ of mandamus as moot.

## Conclusion

Based on the foregoing, in appellate cause number 10-21-00107-CV, we reverse the trial court's February 22, 2021 final judgment and remand for proceedings consistent with this opinion.  In appellate cause number 10-21-00111-CV, we dismiss Eaton's petition for writ of mandamus as moot.

STEVE SMITH
Justice

Before Chief Justice Gray,
      Justice Smith
      and Justice Rose[4]
Appeal reversed and remanded and petition dismissed
Opinion delivered and filed October 12, 2022
[CV06]



---

[4] The Honorable Jeff Rose, Former Chief Justice of the Third Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court.  *See* TEX. GOV'T CODE ANN. §§ 74.003, 75.002, 75.003.